## Reuben Walker *versus* Samuel Fitts.

By a contract between the plaintiff and the defendant it was agreed, that the defend-
ant should cultivate the plaintiff's farm for one season, and should deliver to the
plaintiff one half of the crops, the grain to be threshed and then divided, and should
have the use of a part of the barn to put his grain in. It was *held,* that previous
to a division the parties were tenants in common of the crops.

After the grain had been gathered into the barn, but before it was threshed, a moiety
of it was attached on a writ against the plaintiff and carried away from the barn,
and after a judgment against him he paid the debt and costs and no execution was
issued ; but the grain was not returned to the barn, either by the plaintiff or by the
officer. In an action by the plaintiff against the defendant for not delivering one
half of the grain, it was *held,* that as the plaintiff had not restored the grain to the
barn, so that it might be threshed and divided by the defendant, and had not com-
menced a joint action in the names of himself and the defendant against the officer,
he had virtually given notice to the defendant that he would look to the officer for
his moiety and not call upon the defendant for it ; and the action was not sus-
tained.

This was an action of covenant, to recover damages for
the breach of a contract under seal, between Walker and
Fitts, dated the 1st of April, 1834.

By the contract Walker agrees that Fitts may manage and
carry on the farm in Charlton, on which Walker lives, the
ensuing season, on the following, among other conditions : -
Each party agrees to furnish one half of every kind of seed that
may be necessary to be sowed and planted thereon during the
season, and Fitts agrees to sow and plant the tillage land sea-
sonably and to manage the same according to the rules of good
husbandry, and to deliver to Walker one equal half of the
crops of every kind, properly and seasonably secured in his
house, cellar and barn ; the corn to be divided in the ear, the
oats and other grain to be threshed and then divided ; and
Fitts is to have the use of the east scaffold in the barn, to put
his grain upon, and a privilege of threshing the same in the
floor-way thereof.

On a case stated it appears, that after the making of the con-
tract the defendant began to carry on the farm. The tillage
land was sowed and planted by him, and a quantity of wheat,
rye and oats was raised thereon, which he harvested in due
time and deposited in the barn. After the grain was gathered
into the barn, and in the absence of Walker, a writ was sued

out against him by a creditor, and the officer to whom it was committed for service, went to the barn, on the 13th of August, 1834, and attached a number of bundles of wheat, rye and oats, and carried them away to a place about three miles from the barn. No part of the grain raised upon the farm had then been threshed, but it was all in the barn, and the part taken by the officer did not exceed one half of the whole quantity raised on the farm. There had been no unreasonable delay on the part of the defendant in not threshing the grain, and he was at the barn on the day when the attachment was made, ready and about to commence the threshing. A few days after the attachment Walker returned to Charlton, and on the day when judgment was rendered in the action against him, about the 15th of September, he paid the debt and cost and no execution was issued. The grain thus attached and removed was never returned to the barn by the officer or by Walker, and has never been threshed, nor has Walker ever received it in any other manner than as above stated. The breach for which Walker seeks to recover is for not threshing, dividing and delivering the grain according to the contract.

If the plaintiff was entitled to recover, the defendant was to be defaulted ; otherwise the plaintiff was to become nonsuit.

*Oct.* 10*th,*
1836.

*Washburn,* in support of the action, contended that the plaintiff had no attachable interest in the grain previous to a division, and the attachment being void, the defendant was not excused from fulfilling his contract. Co. Lit. 47 *a* ; 2 Dane's Abr. 233 ; 5 ibid. 577 ; *Hare* v. *Celey,* Cro. Eliz. 143 ; *Jackson* v. *Brownell,* 1 Johns. R. 267 ; Bull. N. P. 85 ; *Foote* v. *Colvin,* 3 Johns. R. 216 ; *Bradish* v. *Schenck,* 8 Johns. R. 117 ; *Bennett* v. *Platt,* 9 Pick. 558 ; *Chandler* v. *Thurston,* 10 Pick. 209 ; *Dockham v. Parker,* 9 Greenleaf, 137. But if the parties were tenants in common, the attachment would hold only an undivided moiety of the grain carried away, and the part left in the barn would remain for division. *Melville* v. *Brown,* 15 Mass. R. 82.

*J. Davis,* for the defendant.

*April term*
1837.

MORTON J. delivered the opinion of the Court. The facts presented in this case raise several questions of some practical importance and interesting to the proprietors and cul-

tivators of the soil. What relation did the occupant bear to
the farm and the owner of it ? And what interest had each in
the products of the land during their growth and preparation
for use ?

The occupant was not the mere servant of the owner. It
was not a contract of hire, in which the laborer was to receive
a portion of the crop as a compensation for his services. It
was not a mere license to enter upon and cultivate the farm,
nor a tenancy at will. He had a right to occupy and an inter-
est in the land. *Jackson* v. *Brownell,* 1 Johns. R. 271 ;
*Chandler* v. *Thurston,* 10 Pick. 209. The owner could not
exclude him, nor maintain an action against him for any thing
done in pursuance of the agreement. But what the precise
nature and character of his interest was, is not so easily deter-
mined. In *Hare et al.* v. *Celey,* Cro. Eliz. 143, it was hold-
en, that the occupants could not bring an action for an entry
upon the land. In *Bradish* v. *Schenck,* 8 Johns. R. 117, it
was laid down, that "letting land upon shares, if for a single
crop, is no lease of the land and the owner alone must bring
trespass."

But whatever may be the nature and extent of the interest
of the occupant, in the land, and whether he has any posses-
sion for the interruption of which he can have any legal reme-
dy or not, it is in our opinion well settled, that of the growing
crops he is tenant in common with the owner. It is true that
Judge *Buller,* whose opinion is as respectable as that of any
other jurist, says that the occupant and not the owner must
bring trespass for an injury to the crop. Bull. N. P. 85. But
the manuscript case to which he referred, and which probably
misled him, doubtless was incorrectly reported or incorrectly
decided. For the unbroken current of authorities, both earlier
and later, are against his position. In *Hare* v. *Celey,* above
cited, which was decided in 1588, it was holden, that "for
spoiling the corn they ought to join, being tenants in common."
And from that time to the present we have no contrary decis-
ion, except the one referred to by *Buller,* which is said to
have been made in 1700. The rule has ever been recognised
by text writers ; 2 Dane's Abr. 233 ; 5 ibid. 577 ; and was ex-
pressly adopted in *Foote* v. *Colvin,* 3 Johns. R. 216, and

*Bradish* v. *Schenck*, 8 Johns. R. 117. The principle that the owner and the occupant are tenants in common of the forthcoming crop, during all its stages of growth and preparation for use and until a severance by the parties, is not only supported by authority, but is founded in good sense and justice. It better protects the rights and interests of both parties, and is more salutary in its operation and effects, than any other rule. This interest or property in the crops is, unless restricted by the express agreement of the parties, assignable and liable to attachment. *Carter* v. *Jarvis*, 9 Johns. R. 143.

The plaintiff and the defendant then were tenants in com mon of the crop from its origin until the tenancy was severed by a division. During this time the moiety of each was liable to be attached or taken on execution for his debts. But although the whole might be seized, yet it was only an undivided interest which could be holden and sold. The officer had no power to make a division, either with or without the consent of the co-tenant ; or to attach a specific parcel as the property of the debtor. And by doing it he made himself a trespasser *ab initio*. *Melville* v. *Brown*, 15 Mass. R. 82.

For an injury to the common property all the tenants must jointly sue and neither can maintain a separate action. And when the officer made himself guilty of a trespass, by taking the common property for the plaintiff's private debt, the only remedy against him for the tort was by a joint action by the plaintiff and defendant. It was equally in the power and more peculiarly the duty of the plaintiff, to cause this action to be commenced. Indeed it would seem to be solely his duty. For the defendant had got his half, with which he was content. He had manifested his satisfaction with the division, and could not properly avoid it. Although the officer had no authority to make a division, yet this act of his might be made valid by the ratification of the parties. The plaintiff therefore ha l an election, either to adopt the division of the officer and receive from him his moiety of the property, or look to him for a remedy for the unlawful taking and conversion, or to reject the division and to look to the defendant for the performance of his covenants. If he intended to adopt the latter alternative, he should either have caused the grain to be restored to the place

whence it had been carried, that the plaintiff might have performed the residue of the labor upon it by threshing and dividing it, or have commenced a joint action for the removal of a part, and called upon the defendant for a division of the residue. But by neglecting to adopt either of these courses, and by settling the action upon which the property was attached and leaving it in the hands of the officer, he gave a constructive and virtual notice to the defendant that he should rely upon his remedy against the officer for his moiety, and not call upon the defendant for it. And in consequence of these acts and omissions, he must be presumed and deemed to have ratified the division made by the officer. If the property be lost or wasted by the neglect or misconduct of the plaintiff, it is equivalent to the use of it, which would not only be conclusive evidence of a ratification, but in itself a bar to this action.

The plaintiff undoubtedly has a remedy against the officer for the property attached, unless he has discharged it by his own acts or negligence. The officer, having returned an attachment of the grain as the several property of the plaintiff, and the defendant having assented to the division, would not be permitted, in answer to a demand for it, to say that it was the common property of the parties to this suit.

We are gratified to find that the principles of law will enable us to render judgment according to the manifest justice of the case. The defendant seems to be in no fault. He was engaged in the faithful execution of his agreement. He was interrupted by the regular process of law. This he could not resist. It rendered it impossible for him promptly and fully to execute his contract. And from the execution of that part which he remained able to do, he was prevented by the conduct of the plaintiff himself. The law will never hold a party responsible for not doing what itself or the other party prevented him from doing. *Smith* v. *Putnam*, 3 Pick. 221.

*Plaintiff nonsuit.*