JOHN STRANGEWAY v. JOHN R. EISENMAN.[1]

May 27, 1897.

Nos. 10,535—(154).

### Tenancy in Common—Farming on Shares—Construction of Contract.

An agreement for the cultivation of land on shares construed, and *held* to create the relation of tenants in common in the crops, as between the owner and the occupier of the land; that, in view of all the other terms of the agreement, the only effect that can be given to a provision "that, until division of the crops, the title and possession shall be and remain in the owner of the land," is that he shall hold the same as security for the performance of the contract by the occupier.

### Same—Performance.

Hence, so long as the occupier performs all the terms of the agreement the owner of the land has no right to take possession from him, but the occupier has a right to the possession of the crops for the purpose of performing thereon the work which he is required to do under the contract.

Appeal by plaintiff from an order of the district court for Olmsted county, Gould, J., refusing a new trial. Affirmed.

*Thomas Spillane*, for appellant.
*H. A. Eckholdt*, for respondent.

MITCHELL, J. This was an action to recover possession of a number of stacks of grain, a quantity of timothy in the shock, and 10 acres of standing corn, being all the crops sown and grown, and then situated, in 1896, on a farm owned by the plaintiff.

In 1894 the plaintiff and defendant entered into a contract, Exhibit A of the record, for the cultivation by the latter of the farm on shares

[1] Reported in 71 N. W. 617.

for a term of years. The material terms of this contract were as follows: The defendant was to till and farm the land in the usual course of husbandry, and was to plant it in such crops as the plaintiff should direct; provided, however, that at least 25 acres should be planted in corn each year, one-half of which was to be cut up for feed for the stock on the premises; the other half to be cribbed thereon. The plaintiff was to furnish all the seed to sow or plant the land, and pay one-half the cost of threshing the grain. The defendant was to furnish all teams, implements, and labor necessary to cultivate the farm, and to harvest, thresh, and secure the crops, and, after taking off the crops, plow as much land for the succeeding crop as was plowed at the time he took possession thereof; keep the buildings, fences, etc., in good repair, the plaintiff to furnish the material therefor. The defendant was not to remove any manure from the farm, but to put it on the land each fall; also, to work out the road tax on the land each year. He was not to sell or remove any of the stock or products of the farm from the premises, until a division thereof, without the written consent of the plaintiff, and until such division the title and possession of all crops and stock on the premises to be and remain in the plaintiff.

The plaintiff was to have the right to take and hold enough of the stock and crops which would, on division of the same, belong to the defendant, to repay any advances made to him by the plaintiff, and any indebtedness due from him to the plaintiff. In case the defendant failed to perform any of the terms of the contract, the plaintiff was to have the right to enter upon the premises and take full and absolute possession of the same, and perform all things which defendant had agreed to do, but which remained undone, and retain enough of the crops that would otherwise belong to the defendant, if he had fulfilled his contract, to pay the costs and expense of plaintiff in performing what defendant ought to have done, and the residue, if any, should belong to the defendant. In consideration of defendant's performance of all the terms of the contract to be by him performed, the plaintiff, upon reasonable request thereafter made, was to give and deliver to the defendant on the farm one-half of all grain, hay, and other crops raised on the farm each year.

It was further agreed that the plaintiff should sell to the defendant one-half of the cows and certain other stock then on the farm; each of the parties thereafter to own one equal half of such stock and the increase thereof; each to furnish one-half the feed for the same. Defendant was to husk all the corn each year; also, to deliver plaintiff's share of the fruit and eggs at his residence in Rochester. Defendant was to deliver the milk of the cows on the farm at the nearest separator, and settle therefor with plaintiff for his share at the end of each month. Defendant was to take possession of the farm at any time after the harvest of 1894, but not later than the first week in October. The plaintiff reserved the right to have the plow land plowed the last season of the contract immediately after the grain was cut.

In August, 1896, before the term of this contract had expired, and before the work of harvesting, threshing, and securing the crops of that season was completed, the grain being in stack or shock on the premises, and the corn uncut, and just as defendant had commenced to thresh the grain, and before there had been any division of the crops, except of the small part already threshed, plaintiff brought this action to recover possession of the whole of the crops raised on the land that year. There was no evidence that the defendant was in default in any of the terms or conditions of his contract. It did appear that he had not yet worked out the road tax on the land, or hauled out the manure that year, but there was no evidence that he was in default as to either. On the contrary, according to the terms of the lease the time for hauling out the manure had not yet arrived.

Some reference was made by the plaintiff in his testimony to a debt which defendant owed him, but none was proved. The defendant had not refused to deliver to plaintiff one-half of the grain when threshed. On the contrary, it appeared that he had delivered one-half of what little had been threshed before this suit was commenced, and expressed his entire willingness to continue to do so. When called by the plaintiff for cross-examination, he did admit that he had hauled away some of the grain; but it did not appear but this was his own half of what had been threshed and divided, and the fair inference from the other evidence in the case is that such was the fact. In brief, there was, under the evidence, no provision in the contract

which entitled the plaintiff to the possession of the property, unless it was the one that until division "the title and possession" should be and remain in him.

The cases are in hopeless conflict as to the construction of contracts between the owner and occupier of land for its cultivation on shares, and as to the rights of the respective parties in the land and in the crops. We have no intention of going into any extended consideration of the subject or the cases. Those who wish to do so will find a quite full collection of the cases and discussion of the subject in the notes to the leading case of Putnam v. Wise, 1 Hill, 347. See, also, Freeman, Co-Ten. § 100. No general rule can be laid down, applicable to all cases of agreements of this kind, because the precise nature of the interest or title between the contracting parties is largely a question of their intention, as expressed in the language they have used, and hence must depend upon the particular provisions of the contract itself. But it may be stated generally that the present tendency of the authorities is to hold that whenever there is a provision, in whatever form, for dividing the specific products of the premises, a tenancy in common arises in the products which are to be divided.

As applied to most agreements for the cultivation of land on shares, this view is much more in accordance with the actual intention as well as interest of both parties than to hold that either the owner or occupier of the land is the exclusive owner of the crops before division, and merely the debtor or creditor of the other for rent or wages. Taking the present contract by its four corners, and considering all its provisions together, we are satisfied that its true construction is that, whatever may have been the relation of the parties as to the land, they were tenants in common of the crops before division, and that, so long as defendant kept and performed all the terms of the contract, he was entitled to the possession and control of the crops for the purpose of performing upon them the labor in the way of harvesting, threshing, etc., which he had a right to do, and was required to do by the terms of his agreement.

The provision that until division the title and possession should be and remain in the plaintiff, if given the effects claimed for it by him, would be as repugnant to both the letter and spirit of the other pro-

visions in the contract as would be a provision that defendant should have no right to enter upon the premises at all, and that, if he did so, he would be a trespasser. The only effect that can be given to that provision consistent with the general purpose, as well as the other express provisions, of the contract, is that plaintiff should have the title, and, when necessary, the right to the possession, of the crops, as security for the performance of the terms of the contract by the defendant. Any other construction would nullify the entire contract, and render impossible its performance by the defendant.

We are referred to Porter v. Chandler, 27 Minn. 301, 7 N. W. 142, as deciding that a contract like that under consideration is merely one of hiring, and that until division the exclusive property in the crops is in the owner of the land. An examination of the paper book in that case shows that the two contracts are in several respects dissimilar, whether sufficiently so to justify the construction which the court placed upon the contract as to the rights of the respective parties in the crops, it is not necessary now to consider. It will be observed, however, that in Porter v. Chandler the contract arose between the owner of the land and a creditor of the occupier, who had caused the whole crop to be levied on under execution against his debtor. It also appeared in that case that the occupier owed the owner of the land a debt, as security, at least, for which the latter was, under the terms of the agreement, entitled to the whole crop. On that ground, if no other, that case was rightly decided.

Order affirmed.