HARRIET McNEAL v. H. A. RIDER and Others.

February 9, 1900.

Nos. 11,871—(193).

## Farming on Shares—Title to Crop in Owner—Chattel Mortgage.

A contract for the cultivation of a farm on shares, in and by the terms of which the landowner reserves the title to the cropper's share of the crops raised, as security for advances made to him, is in legal effect a chattel mortgage, in so far as it operates as security for the payment of such advances, and, to be valid as against subsequent bona fide purchasers, must be filed in accordance with G. S. 1894, § 4129.

## Tenants in Common.

Under such a contract, the parties thereto are, until division, tenants in common of the crops.

Action in the district court for Morrison county against H. A. Rider, as sheriff of said county, and others, to recover possession of personal property, or the sum of $1,000, the value thereof, in case delivery could not be had, and $100 damages for the detention. The case was tried before Searle, J., who found that plaintiff was entitled to judgment for a return, or for the value of the property, determined to be $133.15. From an order denying a motion for a new trial, defendants appealed. Reversed.

*Calhoun & Bennett* and *John H. Rhodes*, for appellants.

*G. W. Stewart*, for respondent.

BROWN, J.

This is an action in claim and delivery for the possession of certain wheat, of the value of $133.15. It was tried by the court without a jury. Plaintiff had judgment, and defendants appeal from an order denying a new trial.

On March 27, 1897, one Milbury was the owner of the tract of land on which the wheat in controversy was raised, and entered into a contract with one Lutes, under which Lutes undertook and agreed to cultivate and farm the land for a share of the crops. This contract is in the form of, and substantially similar to, those considered and construed in Wright v. Larson, 51 Minn. 321, 53 N. W. 712; Strangeway v. Eisenman, 68 Minn. 395, 71 N. W. 617; Anderson v. Liston, 69 Minn. 82, 72 N. W. 52; and Avery v. Stewart, 75 Minn. 106, 77 N. W. 560. Under and by its terms, Lutes agreed to till and farm the land in a good and farmerlike manner during the season of 1897, to furnish at his proper cost and expense all proper and convenient tools and machinery necessary to carry on and cultivate the farm, to furnish and provide all proper assistance and hired help, to protect the fences and shade trees, and to cultivate the land in the best possible manner, and, as soon as the crops were removed, to replow the land and put it in suitable condition for the succeeding year's crop, and further,

"Not to sell or remove, or suffer to be sold or removed, any of the produce of said farm or premises, of any kind, character, or description, until the division thereof, without the written consent of party of second part; and, until such division, the title and possession of all hay, grain, crops, and produce raised, grown, or

produced on said premises shall be and remain in party of second part, and said party of second part has the right to take and hold enough of the crops that would on the division of said crops belong to party of the first part to repay any and all advances made to him by party of the second part, and interest thereon at ten per cent. per annum, and also to pay all indebtedness due said party of second part by said party of first part, if any there be. It is also agreed that, in case said party of the first part neglects or fails to perform any of the conditions and terms of this contract on his part to be done and performed, then said party of the second part is hereby authorized and empowered to enter upon said premises and take full and absolute possession of the same; and he may do and perform all things agreed to be done by party of the first part remaining undone, and to retain or sell sufficient of the crops raised on said premises, that would otherwise belong to said first party if he had performed the conditions thereof, to pay and satisfy all costs and expenses of every kind incurred in performing said contract, with interest at ten per cent. per annum, and the residue remaining, if any, of said crops, shall belong to said party of first part after all conditions hereof are fulfilled."

This contract was duly assigned by Milbury to the plaintiff on September 14, 1897, but was never filed in the office of the town clerk of the town in which the farm is located, or elsewhere. The plaintiff claims that certain advances were made to Lutes, under the terms of the contract, to the amount of $133.15, which have never been paid; and she bases her claim to the wheat under and by virtue of the provisions of the contract giving her the right to take and hold enough of Lutes' share of the crops to secure and pay all advances made to him. On September 7, 1897, for a valuable consideration, and in the ordinary and usual course of business, said Lutes made and executed a chattel mortgage upon his share of the crop of wheat so raised under such contract, to one Wilson, to secure the payment of a promissory note for the sum of $183.29. This mortgage was duly filed, and was sold and transferred to defendant Bouck on October 13, 1897. This defendant claims title to the wheat under this mortgage, and another not necessary to mention; and defendants Rider and Morrill justify as sheriff and deputy sheriff, and under a writ of attachment issued against Lutes in favor of defendant Bouck.

There is no controversy as to the facts. Plaintiff asserts title to the wheat under her farm contract, and defendants assert title

and right to the possession thereof under the Wilson mortgage and the writ of attachment. There is no question as to the validity and good faith of the Wilson mortgage, and, as there can be no serious doubt but that the appeal from the order vacating the writ of attachment revived and continued the writ in force until such appeal was dismissed, the case narrows down to the question whether the contract under which plaintiff claims the wheat is in effect a chattel mortgage, at least in so far as it gives her the right to hold Lutes' share of the crops raised thereunder as security for advances made to him, and whether to be valid as against subsequent mortgagees and attaching creditors, it should have been filed in the proper town clerk's office. If it was necessary to file such contract, to give it validity and priority over subsequent creditors and mortgagees, the rights of the defendants are superior to plaintiff's, and they should have judgment, because the contract was not filed. The answer does not allege a transfer of the Wilson mortgage to defendant Bouck, but the mortgage and the assignment thereof were received in evidence, and are before the court, and must be considered, even though they were duly objected to by plaintiff.

A proper disposition of the case renders necessary a consideration of the questions (1) as to the respective rights and interests of the parties to a contract like that under consideration in and to the crops raised thereunder; and (2) the legal effect of that portion of the contract giving the landowner the right to take and hold enough of the cropper's share of the crops to secure the repayment of advances made to him. Whatever may be the law in other states on this subject, we regard both questions as definitely settled in this state by the decisions of this court in the Strangeway, Anderson, Avery, and Wright cases, supra.

1. If it can be said that the contract construed and considered in the case of Porter v. Chandler, 27 Minn. 301, 7 N. W. 142, is similar in substance and effect to that involved in those cases, the Porter case has been very quietly overruled. In the Porter case it was held that the contract there involved was just what it purported to be,—a contract of hiring,—that the absolute ownership of the crops raised thereunder belonged to the landowner, and that

the cropper or hired man had no interest therein which was subject to levy on execution. The controversy in that case was between the cropper and one of his creditors.

In the Strangeway and Anderson cases a doctrine quite contrary to this is expressly laid down. It is distinctly held in those cases that, until a division of the crops, the parties are tenants in common, with the right of the landowner to hold enough of the crops which would on a division belong to the cropper, as surety for advances made, and as further security, as held in the Avery case, that the cropper will not wrongfully dispose of the landowner's share. Those cases do not hold that the landowner is the absolute owner of the crops, as is held in the Porter case, but, on the contrary, expressly lay down the rule that until a division the parties are tenants in common of all crops raised. This is a distinct departure from the Porter case, and in effect, though not expressly, overrules it. But an examination of the contract considered in the Porter case will show that there are substantial differences between it and the contracts involved in the later cases. The contract in the Porter case starts out as follows:

"That the said A. L. Porter, party of the first part, upon the terms and conditions hereinafter specified, hereby hires and employs the aforesaid Henry Linnemann to work, till, and carry on the following described farm."

Neither this language nor its equivalent is found in the contracts considered in the later cases. It also provides for tilling and farming the land by the cropper in a good, farmerlike manner, and, when the grain raised thereon is threshed, that the cropper will deliver the same, and the whole thereof, to the landowner's granary. And

"It is further agreed and distinctly understood by and between the parties to these presents that all the grain, corn, straw, grass, hay, and all other crops and produce of every kind that shall grow or be raised on said farm during the year or season of 1877, shall be the property of the said A. L. Porter, and that all of the said farm land and premises, and every part and parcel thereof, shall be and remain in the possession of the said A. L. Porter, and under his absolute control and supervision, and all the work and labor to be done on said farm during said term shall be done thereon by

the said Henry Linnemann and A. Linnemann according and agreeably to the orders and directions of the said A. L. Porter, and under his direct supervision; and it is further agreed and mutually understood by and between the parties to these presents that in case the parties of the second part shall fail to do the work in the manner and at the time and times herein specified, or fail to perform and fulfil any of the terms and conditions of this agreement, then and in that case they shall forfeit all claims under this agreement, and the said A. L. Porter shall have the right to have, hold, and retain full possession of the said farm and premises, and to complete the work necessary to be done in said premises."

There is no provision in that contract by which the parties agree that "until a division" the crops belong to the landowner. There is no provision that, in case of default in the performance of the contract by the croppers, the landowner shall have the right to enter upon the farm and complete the work, and deduct the expense thereof from the cropper's share of the crops, as in the Strangeway and Anderson cases. But there is a provision that in case of such default the croppers forfeit all rights under the contract.

The contracts involved in the Strangeway and other late cases expressly recognize the right of the cropper to a share of the crop, and provide for a division thereof; but no such recognition is to be found in the Porter contract, nor does it contain a stipulation as to a division at all. For these reasons, we think the contracts are fairly distinguishable. But, if they are not, it is beyond question that the later cases in effect overrule the Porter case. In the Porter case the landowner is held to be the absolute owner of the crops, with no right or interest in the cropper, while in the later cases it is distinctly held that the landowner and cropper are tenants in common. It is not important what a contract may be named or called by the parties. The real intention as expressed in the writing must control. And, as said by this court in the Strangeway case, contracts of this character must be so construed as to give force and effect to the intention of the parties. Under such a construction there is no room for controversy but that the later decisions of this court are correct, and in harmony with the general trend of the later authorities outside the state.

2. Is the contract, in so far as it reserves the title to the crops in the landowner, and the right to take and hold enough of the cropper's share to repay advances made to him, a chattel mortgage? We think this question has also been definitely settled and determined by the decisions of this court.

There can be no question of the right of a tenant in common to mortgage or otherwise sell or dispose of his interest in the common property. Potts v. Newell, 22 Minn. 561. And, if he may sell or mortgage his interest, the same may be reached on execution or attachment. The question whether a contract like that here involved is in effect a chattel mortgage came squarely before this court in Wright v. Larson, 51 Minn. 322, 53 N. W. 712; and it was there distinctly held that in so far as it created a lien, and reserved in the landowner the ownership of the crops, and the right to take and hold the cropper's share as security for the payment of advances and indebtedness due from him, it was in legal effect a chattel mortgage, and void as to subsequent mortgagees and purchasers in good faith, unless filed. The case of Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117, is very similar to this one. It is there held that a clause in a lease of real estate reserving to the lessor a lien for the rent on the goods and chattels of the lessee placed on the demised premises is in its nature and effect a chattel mortgage, at least in equity, and should be filed. Gilfillan, C. J., speaking for the court in that case, said, at page 85:

"A chattel mortgage is a transfer of the title as security, and strictly, at law, must contain words of conveyance. But so strongly are courts inclined to so construe the agreements of parties as to make them effectual, that no formal words of transfer, and no particular form of instrument, are required to make an agreement operate as a mortgage."

In Strangeway v. Eisenman, 68 Minn. 395, this court said, at page 395:

"The provision that until division the title and possession should be and remain in the plaintiff, if given the effects claimed for it by him, would be as repugnant to both the letter and spirit of the other provisions in the contract as would be a provision that defendant should have no right to enter upon the premises at all, and

that, if he did so, he would be a trespasser. The only effect that can be given to that provision consistent with the general purpose, as well as the other express provisions, of the contract, is that plaintiff should have the title, and, when necessary, the right to the possession, of the crops, as security for the performance of the terms of the contract by the defendant. Any other construction would nullify the entire contract, and render impossible its performance by the defendant."

In the case of Anderson v. Liston, 69 Minn. 82, this court sums up the law on this subject as follows, at page 84:

"So far as it was security for 'advances' and 'indebtedness,' it may be conceded, as the law probably is, that the contract was in effect a chattel mortgage, and was required to be filed, as to subsequent bona fide purchasers and as to creditors."

It is contended that the precise question was not presented in, or necessary to a decision of, that case; but the question was squarely presented in the Wright and Merrill cases, supra, and squarely decided, and the Anderson case is but a statement of the law as there established and laid down. To sustain the position of respondent, we must overrule all these cases, and return to, resurrect, and reannounce as the law, the rule laid down in the Porter case. The nature of the questions will not warrant us in doing so. The lawyers generally have acted on these decisions, accepted them as the law of the state, and proper respect for consistency requires that we adhere to them.

We have gone somewhat extensively into the questions, for the reason that we are not fully agreed as to the nature and extent of former decisions of the court. We have considered and examined all the cases that have come to our notice wherein similar contracts have been involved, and the conclusion reached is in conformity with the law as previously declared by this court. The result is that, as plaintiff's farm contract under which she claims the wheat was not filed, she has no right to the wheat as against the defendants.

Order reversed.

COLLINS, J. (dissenting).

The landowner may easily protect himself as to present indebt-

edness and future advances by filing his contract in the proper office, and, were this the only effect of the prevailing opinion in this case, I should not dissent. But there is a question deeper and of more consequence than this, which is foreclosed by the conclusion that such a contract is nothing more than a chattel mortgage, and must be filed as such; and it is this question which influences me to think the result altogether wrong. Nor can I agree with the majority in the assertion that such a contract is in effect a chattel mortgage, and must be filed. Nor, so far as I have observed, has that been the prevailing opinion among the members of the bar. At the risk of repetition, let me refer to the decisions on which the claim is based that the primary question has already been determined, namely, Porter v. Chandler, 27 Minn. 301, 7 N. W. 142; Wright v. Larson, 51 Minn. 321, 53 N. W. 712; Strangeway v. Eisenman, 68 Minn. 395, 71 N. W. 617; and Avery v. Stewart, 75 Minn. 106, 77 N. W. 560.

Porter v. Chandler was litigated in the court below and in this court, by defendant, upon the claim that in effect the contract there considered was a chattel mortgage, and by its terms constituted the men who worked the plaintiff's farm part owners of the crop raised, before a division thereof. This will be seen on an examination of the paper book on file in the office of the clerk of this court, and the brief of defendant's counsel in the state library. The dispute was between the owner of the land and an attaching creditor of the men who worked the farm. The contract is to be found in the paper book, and, in my judgment, does not differ in any essential feature from that now before us. It purports to be a contract for hiring the Linnemanns to till and cultivate plaintiff's farm for a single season; they to receive as payment a part of the crop. It contained provisions as to details similar to those found in the present contract. Porter was to remain the owner and in possession of all crops, and at the end of the season was to compensate the Linnemanns for their services by delivering to them one-half of the crop raised; excepting and deducting therefrom all claims held by him against these men on account of advances made, and all other matters of indebtedness due from them.

By the contract now in question, Milbury was to remain the

79 M.—11

owner and in possession of all crops until a division was made. Lutes was to be compensated for his work and labor by receiving a share of the crops, and Milbury was to hold and retain enough of the crops raised to repay all advances made and all other indebtedness due and owing from Lutes. The Porter contract was no more one for hiring than was that now before us. The real character of these agreements was the same, and this is the test when comparing them to ascertain their legal effect. Neither one is to be construed by the label which one party or the other chose to attach to his particular instrument. The question now before us was presented and argued in the Porter case, and it was with reference to the contention that the contract should have been filed with the proper town clerk that the court, in the opinion, stated that the exclusive property in the crops was in Porter until he should set apart for the Linnemanns the amount they might be entitled to in payment of the balance due at the time specified, and that defendants' request to charge the jury was wrong because it assumed that the contract was in effect a chattel mortgage. While the question now under consideration was not expressly and in exact terms decided in that case, I am of the opinion that it was really disposed of. If that case is to be considered an authority, it sustains the order appealed from.

It is further to be noticed that the Porter case was referred to in the one next to be mentioned (Strangeway v. Eisenman, 68 Minn. 395, 71 N. W. 617), without an intimation that it was erroneous in any respect. In fact, the suggestion is to the contrary. In the Strangeway case the controversy was between the owner of the farm and the party with whom he had contracted to till and cultivate it. The rights of third parties were not considered.

The next case is that of Anderson v. Liston, 69 Minn. 82, 72 N. W. 52; the dispute arising between the owner of the farm, who had filed his contract, and the mortgagee of the other party, whose mortgage was filed subsequent to the contract. There was a remark made in that opinion concerning the necessity of filing contracts of this character, to which reference will be made later.

. This brings me to the case last mentioned (Avery v. Stewart, 75 Minn. 106, 77 N. W. 560), in which a contract similar to those con-

sidered in Strangeway v. Eisenman and Anderson v. Liston, and to that in the case at bar, was passed upon in a contest between the assignee of the owner of the farm, and a person who had purchased a part of the crop from the other party. It did not appear whether or not the contract had been filed, nor was that point considered. The court held that from the evidence it conclusively appeared that there had been no division of the crop when the sale was made, and then said, at page 108:

"In Anderson v. Liston * * * we held that while the owner and occupier of the land were, under such a contract, tenants in common of the crops, the title to the crops remained in the owner as security for the performance of the contract on the part of the occupier; and it may be added that, until division, the title to the whole remains in the owner as security that his own share will not be wrongfully withheld from him by the occupier."

As intimated in the last few lines of this quotation, the conclusion was that until division the title to the crops remained in the owner of the land. It would seem to follow from the decisions to which special reference has been made, to the effect that the "cropper's" possession or control is only for the purpose of enabling him to cultivate and harvest the crops, and goes no further, and that until a division he cannot sell a part of the products, because the title to all remains in the owner of the farm, as security that such owner will not be wrongfully deprived of his share. There may not be perfect harmony in some things which have been said in the opinions in these four cases, but in none except Anderson v. Liston has it been intimated that a farm contract of the character of the one now before us had to be filed in accordance with the provisions of the statute in order to protect the owner of the farm, as against creditors and subsequent purchasers or mortgagees in good faith of the cropper. It was said in the Anderson case that

"It may be conceded, as the law probably is, that the contract was in effect a chattel mortgage, and was required to be filed, as to subsequent bona fide purchasers and as to creditors";

But this was an obiter remark, wholly unnecessary to a determination of the cause. Of course, it is not binding upon the court.

It is well settled, taking the cases ·specially referred to as a whole, that, as between themselves, the parties to a contract containing the provisions found in the one now presented are tenants in common of the crop prior to a division, each having certain rights therein. The cropper is entitled to such possession and control as will enable him properly to perform the required labor, and this is the extent of his right. He may till, cultivate, harvest, and thresh as he has agreed and is obliged to do, but he has nothing which he can sell or dispose of. If this be so, I fail to see how his mortgage can become effective, or by what authority his share in the crops can be seized at the instance of a creditor, until there has been an actual division.

There is some diversity of opinion in other jurisdictions over this question. In a majority of the courts of last resort it is held that where it is agreed in the contract that the legal title and possession of the crops shall remain in the owner of the land until the other party has fully performed, and there has been a division, the reservation or contract does not operate as a mortgage or mere security to the owner. The legal possession of the land, as well as the title to the entire crop, is in the owner of the soil. The possession of the cropper is limited, and for a special, necessary purpose. Such possession is merely incident to his right and duty to plant, till, cultivate, and gather, and for these purposes only to control the soil and crops. 4 Am. & Eng. Enc. 895, and cases cited; 8 Am. & Eng. Enc. (2d Ed.) 323–325, and citations. And there seems to be no difference of opinion in the courts wherein croppers and landowners are not regarded as tenants in common for all purposes. 4 Am. & Eng. Enc. 899, and cases cited in notes.

I have referred to what was said in the Anderson case. That was purely obiter, and should be excluded from any consideration as an authority. It is to be remarked, however, that the opinion in that case was written by the same member of the court who wrote the opinion in Wright v. Larson, supra, on which the majority place great reliance. But it clearly appears that the question there was not as to the necessity of filing the farm contract in order to protect the landowner. Another question was the one

involved, was the only one necessary to decide, and was the only one mentioned in the syllabus prepared by the writer of the opinion. That it waȘ not regarded as authority on the proposition now contended for is also evidenced by the fact that four years later, in Anderson v. Liston, the same writer seems to have regarded the question as unsettled. From the statement of facts in the Wright case it appears that the chattel mortgage under which plaintiff claimed as against the intervenor (landowner) was executed before the grain was harvested, but that when the plaintiff asserted his rights thereunder, by bringing an action of replevin, the crop had been divided by and between the landowner and the cropper, the latter being in possession of his share. The former had surrendered possession, and with it the title previously held under the contract. The mortgage given to plaintiff by the cropper, which before that time had been a float, simply, not attaching definitely to any property or rights until the contract had been fully performed, then took effect; and this is what controlled that decision. A glance at the briefs will show that the counsel for the landowner did not seriously contend that it was unnecessary to file the contract to protect his client fully before division, while counsel for the mortgagee disposed of the matter by saying that

"A careful reading of the * * * contract will show that * * * it amounts to nothing more than a chattel mortgage upon the defendant's share of the grain after division."

Counsel were quite right, and I think no court would differ with them. Taking the facts and circumstances into consideration, I am of the opinion that the Wright case should not be held as absolutely disposing of the question. I can say that at no time within the twelve years of my service in this court has there been an understanding among its members to the effect now claimed for the decisions. But I said at the outset that it was not important what we held on the abstract proposition, and that, if it were not for a question of greater significance and consequence, I should not dissent. I refer to what must be the inevitable result of the conclusion reached, namely, that, as it is held that such a contract is nothing more than a chattel mortgage, the landowner is powerless

to prevent a sale by the cropper, or a seizure of the crop by a mortgagee, or officer of the law acting in behalf of a creditor, as soon as the seed is in the ground, and the substitution, through such seizure, of a new cropper in lieu of the one he has selected. The person with whom the owner has contracted, perhaps for personal fitness and ability, would then be excluded from the premises, and the self-substituted cropper remain in control. This is the logic of the decision. The basis thereof is that the landowner and the cropper are tenants in common. If so, the latter may sell, or incumber, or a creditor may act through an officer; for, as stated in the prevailing opinion, citing Potts v. Newell, 22 Minn. 561,

"There can be no question of a right of a tenant in common to mortgage or otherwise sell or dispose of his interest in the common property."

I think this court should hesitate long—whether the decision is rested upon the ground of stare decisis or on some other doctrine —before holding that the contract of the man who owns the land, and presumptively is the owner of a crop growing thereon, and a cropper whom he has selected to till and cultivate the same, shall be thrust aside, that a purchaser or a mortgagee or a sheriff may step into the cropper's shoes and carry on the land. That is just what was done here. Before the grain was stacked, the sheriff took possession, excluded the cropper, defied the owner, stacked and threshed the grain, dividing it at his leisure and as he willed. It is not to be forgotten that the landowner cannot protect himself from such an outrage by filing his contract. Filing will not prevent a seizure of the crop and the dispossession of the cropper, if a mortgagee or a creditor chooses to annoy either or both of the parties. Nor is this all. If the contract be filed, a subsequent mortgagee may, under the doctrine of the Anderson case, limit the credit to be given under such contract, and stop all future advances, by giving the landowner actual notice of his mortgage. The owner is then placed between the mortgagee, who gives him notice, and the cropper, who can have very little further interest in the crop; the result to be expected being an abandonment of the crop, and the contract by the latter.

For the reasons stated, and the very serious consequences which it seems to me will flow from the conclusion reached by the majority, I dissent. I am authorized to say that Chief Justice START concurs in these views.