W. K. CLARK v. CARGILL ELEVATOR COMPANY.
JOHN CONERY, INTERVENER.[1]

March 21, 1924.

No. 23,835.

**Farm lease construed in respect to title of crops to be grown.**
    1. Where a farm lease provided that the landowner should retain title to all crops until final settlement and have the right to take enough of the crops which on division would go to the tenant to pay all indebtedness due from the tenant; and that on performance of all the undertakings of the tenant the landowner should deliver to him a specified share of the crops, they were tenants in common of the crops with the title in the landowner as security for the performance of the contract and payment of the amounts due thereunder.

**When division of crops before settlement will not divest landowner of lien.**
    2. The landowner is presumed to intend to retain his security until final settlement, and dividing the grain before making a settlement will not divest him of his lien unless the intention to do so clearly appears.

**Lien not released by division of grain.**
    3. Whether a division of the grain had been made is in dispute, but if made as claimed it did not release the lien.

[1]Reported in 197 N. W. 845.

Action in conversion in the district court for Big Stone county to recover $394.33 or possession of certain wheat. Intervener Conery interposed a claim for. $371.61 for the same wheat. The case was tried before Flaherty, J., who at the close of the testimony granted the motion of intervener Conery for directed verdict in his favor for $367.70. From an order denying his motion for a new trial plaintiff appealed. Affirmed.

*Ray. G. Farrington* and *Charles H. Bolsta,* for appellant.

*Houston & McDonald,* for respondent.

TAYLOR, C.

This action grows out of a dispute as to whether a quantity of wheat raised by plaintiff on the farm of the intervener under a cropping contract belonged to plaintiff or the intervener. The defendant paid the value of the wheat into court and the contest is solely between the plaintiff and the intervener. The court directed a verdict for the intervener and plaintiff appealed from an order denying a new trial.

The contract, with one exception, is similar to the cropping contracts considered in several previous cases· It provided that plaintiff should farm the land, harvest and secure the crops, and should not sell or remove any of them until the final settlement; that he should pay a cash rental of $320 for certain corn, hay and pasture land before the crops were removed, and the further sum of $315 for plowing done by the intervener; that the intervener should furnish the seed and pay half the threshing bill; that he should have and retain the title and possession of all crops until the final settlement, and should have the right to take and hold enough of the crops which on division would belong to plaintiff to pay all indebtedness due him from plaintiff; and that on the faithful performance of all the stipulations of the contract by plaintiff he would deliver to plaintiff on the farm one-half of all the crops raised thereon.

There seems to have been a division of some of the grain which is not in controversy. The grain in dispute was hauled directly from the threshing machine to the elevator. The amount due the

intervener for plowing and cash rentals remained wholly unpaid, and he notified the elevator company that he claimed the grain and not to pay plaintiff for it. Thereupon plaintiff brought this action. He claims that by mutual agreement the grain was divided equally between himself and the intervener as it was loaded on the wagons from the threshing machine, and that making this division divested the intervener of his lien and gave plaintiff one-half of the grain released therefrom. The intervener denies dividing the grain or making any agreement to divide it, but the evidence was sufficient to make this issue a question for the jury, and, if dividing the grain would divest the intervener of his title to or lien upon it under the contract, the court erred in directing a verdict.

It has become the settled law of this state that under such a contract the parties are tenants in common of the crops with the title in the landowner as security for the performance of the conditions of the contract and for the payment of the amounts due him thereunder. Strangeway v. Eisenman, 68 Minn. 395, 71 N. W. 617; Anderson v. Liston, 69 Minn. 82, 72 N· W. 52; Avery v. Stewart, 75 Minn. 106, 77 N. W. 560, 78 N. W. 244; McNeal v. Rider, 79 Minn. 153, 81 N. W. 830, 79 Am. St. 437; Denison v· Sawyer, 95 Minn. 417, 104 N. W. 305.

Several cases hold that where the parties divide the crop and the landowner delivers a portion of it to the cropper as his share, he thereby waives and releases his lien on the portion so delivered. Thorne v. Allen, 72 Minn. 461, 75 N. W. 706; Avery v· Stewart, 75 Minn. 106, 77 N. W. 560, 78 N. W. 244; Graves v. Walter, 93 Minn. 307, 101 N. W. 297. But the contracts involved in the cases so holding provided that the title and the right to the possession of the crops should remain in the landowner as security until the division, and it followed therefrom that dividing the crop and delivering his share to the cropper terminated the lien· In the present case the contract provides that the title and right to the possession of the crop shall remain in the landowner until the *final settlement*. It is conceded that no settlement of any sort has ever been made, and that the amount due from plaintiff under the contract exceeds the value of the grain in controversy. Plaintiff bases his

contention on the claim that the grain was divided, and that the action of the intervener in dividing it had the effect in law of releasing his lien, although no settlement was ever made or attempted and the amount of the lien exceeds the value of the grain. We are unable to sustain this contention. By the terms of the contract, the intervener was to hold the title to the grain as security until the final settlement with the right to take enough of what would otherwise belong to the plaintiff to pay all indebtedness due from the plaintiff, and the plaintiff was not entitled to have any of the grain turned over to him free from the lien until he had made the stipulated payments. Under such a contract, we see no reason why the landowner may not join with the cropper, at any time before the final settlement, in separating the share admittedly belonging to him from that belonging to the cropper but held by him as security without his action working a forfeiture of his security.

Of course he may turn over the cropper's share under circumstances which so clearly evince an intention to vest full title in the cropper that it will operate to waive or release his lien. But, as parties seldom intentionally relinquish a property right, it is presumed that he did not intend to do so, but intended to retain his lien; and only facts clearly inconsistent with such an intention will overcome this presumption. Henry v. Hutchins, 146 Minn. 381, 178 N. W. 807; James v. Pettis, 134 Minn. 438, 159 N. W. 953. No such facts exist in the present case. The intervener has always asserted title to the grain, and at the time it was deposited in the elevator gave notice of his claim to both the elevator agent and the plaintiff. He cannot be held to have relinquished his right to the grain, and the ruling of the trial court was correct.

Order affirmed.