# MUTUAL BENEFIT LIFE INSURANCE COMPANY v. CANBY INVESTMENT COMPANY AND ANOTHER.[1]

November 17, 1933.

No. 29,518.

[1]Reported in 251 N. W. 129.

*Fred Jensen, R. S. Lammers, J. V. Williams, Sweet, Johnson & Sands*, and *John R. Van Derlip*, for appellant.

*A. R. English* and *Clarence J. Donnelly*, for respondent.

*DEVANEY, Chief Justice.*

The defendant Canby Investment Company, a corporation, hereinafter referred to as the Canby company, is, and at all times important to the determination of this action has been, the owner of a certain tract of agricultural land situated in Lincoln county, Minnesota. The property is subject to a valid first mortgage, not given to secure any part of the purchase price, executed in 1925 and at present held by the plaintiff in this action. Under the terms of the mortgage defendant Canby company is bound to pay the taxes, insurance, and any assessments levied against the property and to keep the premises in a state of good repair. The mortgage further provides that upon the mortgagor's failure to do so the mortgagee shall "be entitled to have, demand, receive and receipt for any rents due or to become due from any tenant of said premises, or any part thereof, and apply the same to payment of such taxes, assessments, repairs or premiums of insurance." In December, 1931, defendant Canby company leased the premises to defendant Kosberg, and agreed to take as "rent" therefor "one-half share of all grains and vegetables; and $4.00 per acre for all hay, pasture and corn land." Defendant Canby company, in violation of the provision of the mortgage, failed to pay the taxes for 1930 and for the first half of 1931. These amounts total $250.72. The plaintiff paid the same and subsequently commenced this action, seeking first to replevin from defendant Kosberg the share of grain which he owes

defendant Canby company under the aforementioned lease, and, second, to have judgment for the cash rent which defendant Kosberg owes defendant Canby company under the lease. The parties stipulated in writing that the sheriff might collect the cash rent due from Kosberg, seize and sell the grain, and hold the proceeds therefrom as well as the cash rent pending the outcome of this action. At the time of commencing this action the cash rent had not been paid, but defendants do not seriously question plaintiff's right thereto and take issue only on plaintiff's right to replevin the grain. The case was tried before the court without a jury upon wholly stipulated facts. The trial court denied plaintiff's claim and found for defendant. From judgment entered pursuant thereto plaintiff appeals.

The legal questions involved are, in the main, four:

(1) Is a provision of a mortgage valid which assigns rent to the mortgagee so that he may reimburse himself if he is compelled to pay taxes, to maintain insurance, and to make repairs on the mortgaged premises to keep his security intact?

(2) Was the relationship in this case between defendant Kosberg and defendant Canby company that of landlord and tenant, or was it that of joint adventurers so that the two are tenants in common of the crops raised on the land?

(3) Is the clause of the mortgage, above quoted, sufficient to amount to an assignment or pledge of rents to the mortgagee upon the happening of the contingency provided therein?

(4) Is such provision of the mortgage in violation of 2 Mason Minn. St. 1927, § 8359, which provides:

"Any provision in a mortgage on crops which by its terms shall mortgage or convey any crop to be grown later than during the season beginning May 1 next following the date thereof shall be void, except when the mortgage is given to secure a part or all of the purchase price or rent of the land upon which the crop is to be grown, * * *."

■ Concerning the first question there is no controversy in this state. What is now 2 Mason Minn. St. 1927, § 9572, providing that

a mortgage is not a conveyance so as to entitle the mortgagee to possession without foreclosure, has been held effectually to prevent the mortgagor, at the time of executing the mortgage, from assigning rents to the mortgagee for the purpose of applying the same against the principal or interest of the mortgage debt. Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818; Orr v. Bennett, 135 Minn. 443, 161 N. W. 165, 4 A. L. R. 1396; see Justus v. Fagerstrom, 145 Minn. 189, 176 N. W. 645; Fidelity-Philadelphia Tr. Co. v. West, 178 Minn. 150, 156, 226 N. W. 406. An assignment of rents for the purpose of applying the same to the principal of the mortgage is a partial foreclosure. It is a clear evasion of the fundamental, and now statutorily enacted, principle of law that until the mortgage debt is due, until the mortgage has been foreclosed, and until the period of redemption has run, unless extraordinary circumstances justify the appointment of a receiver, the mortgagor shall be entitled to the possession, enjoyment, and full usufruct of the land. An assignment of rents to the mortgagee subsequent to the time of executing the mortgage is valid under certain circumstances, Farmers Tr. Co. v. Prudden, 84 Minn. 126, 86 N. W. 887, but that principle has no application in the present case, for here the assignment was concurrent with the execution of the mortgage. It is, however, a "species of waste" for the mortgagor to fail to pay taxes and assessments which accrue against the property and which, if unpaid, create a lien thereupon prior to that of the mortgagee, 2 Jones, Mortgages (8 ed.) § 849, p. 167; see Nielsen v. Heald, 151 Minn. 181, 186 N. W. 299, 26 A. L. R. 29; Fidelity-Philadelphia Tr. Co. v. West, 178 Minn. 150, 156, 226 N. W. 406. So it has long been settled that a provision of a mortgage assigning rents to reimburse a mortgagee who is compelled to pay taxes on the property to keep his security intact is valid and will be enforced. Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818; Fidelity-Philadelphia Tr. Co. v. West, 178 Minn. 150, 226 N. W. 406; Peterson v. Metropolitan L. Ins. Co. 189 Minn. 98, 248 N. W. 667. Similarly, failure to pay insurance or to make repairs may constitute waste.

■ Defendants, while granting that plaintiff mortgagee may be entitled under the mortgage clause to the cash rents which Kosberg

owes the Canby company, earnestly argue that plaintiff is not entitled to the defendant Canby company's share of the grain. Defendants contend that under the above mentioned farm contract they are joint adventurers, that they are tenants in common of the grain in question, and therefore that there is no rent to which this clause in the mortgage assigning rents can fasten itself or can apply. Such a result might follow if the premise were true. Certainly if the Canby company had farmed the land itself there would be no rent to which this clause of the mortgage could apply. Therefore, a clause such as is found in this mortgage is without meaning and effect as far as concerns a mortgagor who occupies and cultivates the mortgaged land. So also, if the Canby company had farmed the land jointly with another, the share of crops accruing to it might not be "rent" to which this mortgagee would be entitled. However, we find here that the relationship between the two defendants is not that of joint adventurers but rather is that of landlord and tenant, and hence that there is no tenancy in common of the crops. Defendants cite us to cases holding that under a contract to farm on shares the cropper and the owner of the land are tenants in common of any grain raised on the land until there has been a division thereof. A careful reading of these cases reveals that they are distinguishable from the case at bar.

"No general rule can be laid down, applicable to all cases of agreements of this kind, because the precise nature of the interest or title between the contracting parties is largely a question of their intention, as expressed in the language they have used, and hence must depend upon the particular provisions of the contract itself." Strangeway v. Eisenman, 68 Minn. 395, 398, 71 N. W. 617, 618.

Accord, see 2 Minn. L. Rev. 43. In the cases cited by defendants' counsel (Strangeway v. Eisenman, 68 Minn. 395, 71 N. W. 617; Anderson v. Liston, 69 Minn. 82, 72 N. W. 52; Avery v. Stewart, 75 Minn. 106, 77 N. W. 560, 78 N. W. 244; McNeal v. Rider, 79 Minn. 153, 81 N. W. 830, 79 A. S. R. 437) it is patent that the share contract was in the nature of a joint adventure agreement whereby the landowner, continuing to retain the property rights to, and the

control of, the land, allowed the cropper to farm it, and in return therefor allowed him to have a share of the crops. In the instant case it appears certain that the parties intended that the relationship of landlord and tenant should exist. The language of the instrument itself and the provisions embodied therein can lead us to no other conclusion. The instrument purports to "remise, lease and let" the land; the premises are referred to as "the above rented premises," and as "leased premises," the one party being denominated as "lessor," the other as "lessee"; Kosberg agrees to pay cash and a share of grain "as rent"; the Canby company is allowed to reënter and take possession of the "above rented premises" upon the happening of certain contingencies; and the duration of the contract is referred to as "the term of this lease." It is provided in the instrument that defendant Kosberg is to pay cash "as rent" for part of the premises and to pay a share of grain "as rent" for the remainder of the premises. Further, to secure payment by Kosberg, the Canby company, as a part of the farming contract, and to make certain that the instrument never created the relationship of joint adventurers or tenants in common, took a chattel mortgage from Kosberg on all crops which were to be grown on the land that year. Of what effect was a chattel mortgage unless the agreement presupposed that Kosberg was the owner of the crop and that he was to deliver a part of it as rent? A perusal of the records and paper books of the cases upon which defendant relies reveals that in all such cases (a) it was provided that title to the crops to be grown was to remain in the landowner; (b) there was no provision whereby the cropper was to pay any cash rental; (c) in none of them did the landowner take a mortgage from the cropper on the crops to be grown; and (d) in none of them excepting the Avery case, 75 Minn. 106, 77 N. W. 560, 78 N. W. 244, was the contract even referred to as a "lease." Under the instant contract it seems impossible to conclude that the Canby company considered itself to be the owner of the crop or a tenant in common thereof with defendant Kosberg in view of the fact that it took a chattel mortgage on all the crops from Kosberg, provided that part of the rent from Kosberg should be cash, and termed the instrument a lease. A

case much more analogous to the one at bar than those above cited is State ex rel. Gillilian v. Municipal Court, 123 Minn. 377, 143 N. W. 978, 979, where the court, following the rule that the intention of the parties governs, held an instrument similar to the one now before the court to be a lease. The court there said [123 Minn. 380]:

"It is well settled * * * that a contract to cultivate land on shares may be a lease. * * * The intent of the parties governs. It is usually held that where the cropper has possession exclusive of the owner, this is conclusive of the relation of landlord and tenant. * * * Provisions for a fixed term, * * * provisions to give up possession at the end of the term, * * * provisions against underletting, and provisions to keep the improvements on the premises in repair, * * * are all of them important indications of an intent to create the relation of landlord and tenant."

In the instant case Kosberg was entitled to exclusive possession, the instrument was for a fixed term, contained a provision for giving up possession at the end of that term, prohibited underletting without written consent, and required that Kosberg keep the improvements in a reasonable state of repair.

Construing this instrument to be a lease, it cannot be held that the defendants are tenants in common of the grain in question. In 2 Tiffany, Landlord & Tenant, § 253, pp. 1653-1654, it is said:

"There are a number of decisions in which the landlord and tenant have been regarded as tenants in common of the crop. But there are perhaps even more cases in which the two relations are regarded as inconsistent, for the reason that crops regularly belong to the tenant, and the share of the crop which is eventually to go to the landlord is in the nature of rent, and the fact that an article is to be delivered in payment of rent cannot make it the property of the landlord until it is delivered or 'rendered' to him."

To state that the instrument here under consideration is a lease by the terms of which Kosberg was to pay "rent" to the Canby company, and yet that the two defendants are tenants in common, states

an obvious inconsistency. Especially would this be so in this case where the Canby company took a chattel mortgage on the entire year's crop from Kosberg.

We submit that if defendant Canby company had wished to avoid the result herein reached it might have done so by making Kosberg and itself joint adventurers so that there would be a tenancy in common of the crops raised on the land. Then it might well be claimed that there would be no rent to which this assignment clause could attach itself or apply. This was not done, however, and so it must be held that the contract created the relationship of landlord and tenant and that the grain and cash to be paid by Kosberg to the Canby company was rent.

■ Defendants contend that the mortgage clause giving the mortgagee the right to "have, demand, receive, and receipt for any rents due" is not sufficient to assign the rents to plaintiff. Defendants somewhat weaken their position in this respect by admitting that were these lands rented at a stated monthly or annual cash rental there would be no question but that the plaintiff would be entitled to collect the cash rent from Kosberg and apply the same to the payment of taxes, repairs, and insurance. However, apart from that, there can be but little question that this clause, worded as it is, is in equity a sufficient assignment to entitle plaintiff to the rent here in question. While it is true that in 1925 when the mortgage was executed the rents for 1932 were not ascertained, nor was it known whether there would be any rent at all for that year, yet courts of equity do not confine themselves to the giving of effect to assignments of rights and interests which are absolutely fixed and *in esse*. Contingent interests, expectancies, and things resting in mere possibility only are assignable. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 555. The assignment can, it is true, have no positive operation to transfer *in praesenti* property in things not *in esse;* but it operates by way of present contract to take effect and to attach to the things as soon as they come into *esse*. So here, the clause of the mortgage is, in equity, a contract to assign the 1932 rents for a certain purpose upon the happening of a certain contingency, and when the crops which comprised the 1932 rent came into existence,

there was an effective assignment. See Ludlum v. Rothschild, 41 Minn. 218, 221, 43 N. W. 137; Hillsdale Distillery Co. v. Briant, 129 Minn. 223, 227, 152 N. W. 265.

■ Lastly, it is urged that the above clause which assigns rent to the mortgagee for the payment of taxes is in violation of 2 Mason Minn. St. 1927, § 8359, which prevents the mortgaging of crops to be grown later than during the season beginning May 1 next following the date thereof. The present mortgage was executed in 1925 and contained this assignment clause. The rents, both in quantity and in kind, which might come due to the mortgagor for any particular year were at that time unascertained. The rents for 1932 might have been cash, grain, or services; or there might have been no rent at all. It is obvious that the parties did not intend this clause to be a mortgage on the crops grown in 1932. Even if they had so intended, it is a question whether it would not have been void for lack of a proper description of the subject matter attempted to be mortgaged. A mortgage must specify the goods to which it is to attach. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1432; Farmers & M. Bank v. Stockdale, 121 Iowa, 748, 96 N. W. 732. So it is manifest that this clause assigning rents in the future upon the happening of a certain contingency cannot be held to be a mortgage on future crops within the purview of the above mentioned statute. To hold otherwise would be to fail to distinguish between the rental fund and the items which compose the fund.

While the assigning or pledging of rents for the payment of taxes, insurance, and the saving of waste lawfully may be done, it must be clearly understood that the mortgagee will be allowed to collect only rent in an amount necessary to pay taxes then due or delinquent, insurance covering a period up to the time of the collection of rent each year figuring such insurance on an annual premium basis, and the cost of repairs actually expended by him during the period for which the rent was taken' and necessary to save waste. This right to collect rents for the purposes specified must not be used to oppress the mortgagor. It must not be used to build up or to establish a fund with which to pay future taxes, insurance, and repairs. The avails of all rent not used for the payment of

taxes, insurance, and repairs covering a period up to but not beyond that for which the rent was taken belong to the mortgagor and must be paid to him or a full accounting made to him of the rent so taken.

In accordance with the foregoing opinion, this case is remanded with instructions to the trial court to order the sheriff of Lincoln county to pay to plaintiff out of the funds that are now in his possession under the parties' stipulation (1) an amount equal to such sum as this plaintiff has paid in due or delinquent taxes on said land covering a period up to but not beyond that for which said rent was taken under said lease; (2) such proper amount as plaintiff has paid for necessary insurance up to but not beyond that date computing the insurance in annual payments; and (3) such repairs only as the plaintiff may have necessarily made up to but not beyond that date to prevent waste. Otherwise, whatever money remains is ordered turned over to defendant Canby Investment Company.

Judgment reversed.

