G.G.C. CO., et al., Respondents,

v.

The FIRST NATIONAL BANK OF ST. PAUL, Respondent,

and

Charles Cox et al., additional defendants on the counterclaim, Respondents,

Melvin C. Gittleman, Intervenor, Appellant.

No. 48399.

Supreme Court of Minnesota.

Aug. 24, 1979.

Rehearing Denied Oct. 23, 1979.

O'Connor & Hannan, Joe A. Walters, Frank J. Walz, and Charles T. Nixon, Minneapolis, for appellant.

Briggs & Morgan, Philip L. Bruner, and Richard D. Holper, St. Paul, for First National Bank of St. Paul, respondent.

Heard before KELLY, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

In an action by G.G.C. Co. (the corporation), mortgagor, to restrain the First National Bank of St. Paul (the Bank), mortgagee, from collecting rents from an apartment complex during the period of redemption following the Bank's purchase of the property at a foreclosure by advertisement sale, intervenor, Melvin C. Gittleman, appeals from the judgment against the corporation. The Bank seeks review of the denial of its motion to have judgment entered against Gittleman.

The issues raised are whether an assignment-of-rents clause contained in a mortgage remains enforceable after a foreclosure sale; whether the Bank purchased the apartment complex in good faith, entitling it to a deficiency judgment; and whether Gittleman is liable to the Bank for the amount of the deficiency remaining after the foreclosure sale. We hold that the assignment-of-rents clause contained in the mortgage is enforceable during the period of redemption and that the trial court prop-

erly applied the escrowed rent receipts to the payment of taxes, assessments, and interest on the first mortgage.

We further hold that the Bank is entitled to a deficiency judgment, but that Gittleman is not directly liable for that deficiency. For the reasons specified in this opinion, however, we modify the judgment of the district court to limit the Bank's recovery to the $300,000 deficiency and $12,000 attorneys fees, plus interest, in addition to the funds held in escrow.

In 1972, Charles Cox, Morris Grossman, Thomas King, and Melvin Gittleman formed a partnership with the name G.G.C. Co. (partnership) for the purpose of building and operating Raven Hill, a 304-unit apartment complex in Burnsville. Gittleman and Grossman each held one-third shares in the partnership, while Cox and King held the remaining one-third share. Cox, Grossman, and King (but not Gittleman) formed a corporation, also known as G.G.C. Co., which was appointed by the partnership as attorney-in-fact to obtain financing for Raven Hill. On November 17, 1972, the corporation obtained a loan from and executed a promissory note to the Bank in the sum of $1,250,000. The note was endorsed by Cox, Grossman, and King (but not Gittleman) as guarantors and was secured by a second mortgage on Raven Hill.

The corporation defaulted on its note payments and the Bank foreclosed on Raven Hill by advertisement on October 10, 1975. After the foreclosure sale, the Bank was declared by the district court to be the high bidder and partial summary judgment was entered for the Bank, declaring its Raven Hill bid to be valid and the sale to it to be effective. No appeal was taken from this order or judgment. The Bank's bid was for $779,389.61, exactly $300,000 less than the debt owed by the corporation.

During the one-year period of redemption, the district court directed that the plaintiffs pay $309,117.18 in rent receipts into an escrow account as security for the deficiency judgment. During this period, the partnership paid neither interest on the first mortgage nor real estate taxes and assessments due and payable as of January 1, 1976. In order to keep the first mortgage from foreclosing, the Bank paid debt service in the amount of $444,146.74 to the first mortgagee and taxes and assessments in the amount of $198,678.02.

On December 2, 1976, the Bank entered into a settlement agreement with Cox, Grossman, and King, which cited the various liabilities of the parties to the Bank arising from the Raven Hill project and other transactions. Cox, Grossman, and King agreed to assign their partnership shares to the Bank and to deliver all records and documents concerning Raven Hill to the Bank. The Bank agreed not to sue Cox, Grossman, and King on any claim arising out of Raven Hill in consideration for their delivery to the court ordered escrow account of the remaining $103,316.18 in unspent rent receipts from Raven Hill.

On July 27, 1977, the district court ordered judgment against the corporation in favor of the Bank in the sum of $942,824.76, plus $12,000 attorneys fees, plus interest as reimbursement for payment of taxes and interest on the first mortgage loan during the period of redemption and to satisfy the deficiency existing after foreclosure of the mortgage. The entire escrow account was paid to the Bank toward satisfaction of the judgment. The district court allowed the Bank no relief against intervenor Gittlemen because he was not a principal of the corporation and had not signed the promissory note running in favor of the Bank.

The Bank, as mortgagee, and the corporation, as mortgagor, covenanted in their second mortgage agreement as follows:

"(b) The Mortgagee shall have power, irrevocably, to (i) manage, control and lease the mortgaged premises; and collect all rents, due or to become due and whether before or after foreclosure, which rents are hereby assigned by Mortgagor to Mortgagee as additional security for the debt secured by this mortgage and (ii) apply the same to pay such of the following items as Mortgagee elects: expenses of management, taxes, assessments, insurance premiums, repairs, prin-

cipal and interest on any prior mortgages or other liens, and principal and interest on this mortgage."

Pursuant to this clause, the district court authorized the Bank to hold the total unspent rent receipts amounting to $412,-433.36 collected from Raven Hill tenants during the one-year period of redemption following the foreclosure sale in an interest bearing escrow account pending final adjudication of this action. Upon judgment, the district court ordered these escrow funds applied in partial satisfaction of the judgment.

At common law, a mortgage conveyed legal title to the mortgaged property and a mortgagee was entitled to immediate possession upon default unless the terms of the mortgage specifically created a mere lien upon the property. Minnesota, by statute,[1] became a "lien theory" state, abrogating the common law by providing that a mortgagee was not entitled to possession without foreclosure. In construing the pre-1969 version of this statute, this court extended the prohibition of a mortgagee's taking possession to contemporaneous assignments of rents on the theory that rents were an important incident of possession. See, *Cullen v. Minnesota Loan & Trust Co.*, 60 Minn. 6, 61 N.W. 818 (1895); Note, *Proposed Changes in Minnesota Mortgage Law*, 50 Minn.L.Rev. 331 (1965). Prior to 1969, however, this court carved out two exceptions where it permitted enforcement of assignment-of-rents clauses: (1) Where the assignment-of-rents clause was for the purpose of reimbursing the mortgagee for payment of pre-foreclosure sales taxes, assessments, insurance, interest on prior mortgages, or necessary repairs, see, *Erickson-Hellekson-Vye Co. v. A. Wells Co.*, 217 Minn.

361, 15 N.W.2d 162 (1944); *Mutual Benefit Life Ins. Co. v. Canby Inv. Co.*, 190 Minn. 144, 251 N.W. 129 (1933); *Fidelity-Philadelphia Trust Co. v. West*, 178 Minn. 150, 226 N.W. 406 (1929); *Nielsen v. Heald*, 151 Minn. 181, 186 N.W. 299 (1922); *Cullen v. Minnesota Loan & Trust Co., supra*; or, (2) where the assignment of rents was made after the execution of the mortgage for a new consideration and pledged rents for application to the mortgage debt, taxes, insurance, or repairs (*Seifert v. Mutual Benefit Life Ins. Co.*, 203 Minn. 415, 281 N.W. 770 (1938); *Prudential Ins. Co. v. A. Enkema Holding Co.*, 196 Minn. 154, 264 N.W. 576 (1936); *Farmers Trust Co. v. Prudden*, 84 Minn. 126, 86 N.W. 887 (1901). As to the first exception, pre-1969 assignment-of-rents clauses were held to be unenforceable after the foreclosure sale during the redemption period unless waste sufficient to require the appointment of a receiver could be shown.[2] *Gardner v. W. M. Prindle & Co.*, 185 Minn. 147, 240 N.W. 351 (1932); *Grady v. First State Security Co.*, 179 Minn. 571, 229 N.W. 874 (1930).

In 1969, the Minnesota Legislature amended Minn.St.1967, § 559.17 to make assignment-of-rents clauses enforceable without requiring that a separate and subsequent consideration be given:

"A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure. *Nothing contained herein shall be construed to prevent a mortgagor from assigning, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, and such an assignment shall be valid whether contained in the*

---

**1.** Minn.St.1967, § 559.17 and its predecessors provided: "A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure."

**2.** To obtain a receiver pendente lite under Minn.St.1976, § 576.01(1), the applicant must show: (1) the mortgagor is insolvent; (2) the

mortgagor is committing waste; and (3) the value of the security is inadequate to cover the mortgage debt. *Mutual Benefit Life Assur. Co. v. Frantz Klodt & Son*, 306 Minn. 244, 237 N.W.2d 350 (1975). The district court denied the appointment of a receiver in this case although it found that the mortgagor was committing waste.

*mortgage instrument itself or in a separate instrument.*[3] (Italics supplied.)

With this amendment, the legislature differentiated between possession and the right to collect rents. The provisions of the statute prohibiting a mortgagor from taking possession of the property without a foreclosure remained unchanged. The statute, as amended, provides that though a mortgagee may not dispossess a mortgagor without a foreclosure, it may nevertheless receive an assignment of rents as additional security for the debt. We stated by way of dictum in a case involving a pre-1969 loan with an assignment-of-rents clause similar to that in the instant case that had the 1969 amendment applied to that case, the assignment of rents would have been valid. *State Mutual Life Assur. Co. v. Frantz Klodt & Son*, 306 Minn. 249, 253, 237 N.W.2d 354, 356 (1975). We did not address specifically, however, the issue of the validity of the assignment clause after a foreclosure sale during the redemption period.

In *Cross Companies v. Citizens Mortgage Inv. Trust*, 305 Minn. 111, 232 N.W.2d 114 (1975), we held that the rights of a mortgagee under an assignment-of-rents clause terminate upon a foreclosure sale for the *full* amount of the indebtedness.[4] The post-1969 assignment-of-rents clause in *Cross* contained a specific provision that it would continue in effect during the redemption period as payment for any deficiency which might result from a foreclosure sale. Our holding was compelled by the facts of that case, since there was no deficiency from the foreclosure sale in *Cross*. We gave effect to the express intention of the parties that the assignment of rents would terminate on full payment of the mortgage debt. By contrast, in the instant case, the assignment-of-rents clause did not provide that it would terminate on full payment of the

mortgage debt. Moreover, a $300,000 deficiency remained after the default, which the assigned rents were designed to secure. Hence, the instant case is distinguishable from *Cross* on its facts, and intervenor Gittleman's argument that *Cross* requires us to reverse the trial court's decision is not persuasive. *Cross* should not be read to completely prohibit the enforcement of assignment-of-rents clauses during the period of redemption. We hold that the trial court properly enforced the assignment-of-rents clauses contained in the mortgage for the purpose of securing the $300,000 deficiency.

Besides providing security for the payment of a deficiency following a foreclosure sale, the assignment of rents from the corporation to the Bank was also for the stated purpose of paying taxes, assessments, insurance, interest and principal payments on the first mortgage, and necessary repairs. This court has recognized the validity of assignment-of-rents clauses for these purposes long before the 1969 amendment extended their application to securing the mortgage debt itself. *Gardner v. W. M. Prindle & Co.*, 185 Minn. 147, 240 N.W. 351 (1932). Generally, a showing sufficient to support the appointment of a receiver was required to enforce such an assignment during the redemption period after a foreclosure sale. The district court expressly found that the corporation's failure to pay taxes and assessments during the redemption period constituted waste, but the judge ordered the establishment of an escrow account rather than the appointment of a receiver at least, in part, to save the parties the expense of a receiver. We conclude that pursuant to the assignment-of-rents clause, rents collected, including those collected during the period of redemption, could be applied to both the deficiency fol-

3. In 1977, the Minnesota Legislature again amended § 559.17, specifically authorizing assignment-of-rents clause which may apply after the foreclosure sale. The new statute, which has no application here, is limited to mortgages of at least $500,000. Provision is also made to ease the appointment of receivers.

4. In another case involving a post-1969 assignment of rents, *Mutual Benefit Life Ins. Co. v. Frantz Klodt & Son*, 306 Minn. 244, 247, 237 N.W.2d 350, 353 (1975), we stated in dictum that the 1969 amendment allowed "mortgagees to take an assignment of the rents as separate security for the mortgage debt itself, in addition to the security provided by the [mortgaged] property."

lowing the foreclosure sale and the payment of taxes, assessments, and the other enumerated expenses according to the Bank's election. It is only fair to require a mortgagor to apply rent receipts to a deficiency and to essential expenses of the rental property before allowing it to divert the income to purposes unrelated to the rental property. We hereby uphold the district court's establishment of an escrow arrangement with safeguards such as periodic accountings to the court as a proper and efficient method of enforcing an assignment-of-rents clause. Consequently, the strict requirements which must be satisfied to obtain the appointment of a receiver under Minn.St.1976, § 576.01(1), need no longer be met in order to enforce an assignment-of-rents clause.

■ The district court erred, however, in concluding that the corporation's default in payment of taxes, assessments, and interest on the first mortgage made all of those obligations a part of the principal debt due, even beyond the escrowed rents under the assignment-of-rents clause. The trial court apparently agreed with the Bank's contention that the covenants incorporated in the mortgage by virtue of the statutory short form mortgage, Minn.St. 507.15, subds. 4, 7, required the mortgagors to pay all taxes, assessments, and interest on prior mortgages during the redemption period, even *beyond* the amount of rental receipts. These covenants provide that on the nonpayment of these items by the mortgagor, the mortgagee may pay them and they will become part of the debt secured by the mortgage. After foreclosure, however, there is no debt secured by any mortgage. The mortgage is discharged on foreclosure, except for a valid assignment-of-rents clause to secure a deficiency or to apply any available rents to such expenses as taxes, assessments, and interest on prior mortgages. A mortgagor is not held personally liable if the rental income is insufficient to meet the necessary expenses of the property. Upon the foreclosure sale, the purchaser is in the position of a conditional owner of the property, subject to the mortgagor's right to possession and his right and that of others to redeem. The purchaser can be expected to protect his interest to the extent that the rents and profits of the property do not cover expenses such as taxes and prior mortgage payments that may become liens on the property [5] by varying his bid at the foreclosure. The trial court's error resulted in an incorrect calculation of the judgment for the Bank, since its judgment included all tax and mortgage payments made by the Bank on behalf of the corporation, even beyond the escrowed rents. We therefore modify the trial court's judgment to apply all escrowed rent, as a matter of equity, first to the taxes, assessments, and first mortgage payments made by the Bank. The escrowed rents amounting to $412,433.36, plus interest, will be completely exhausted by the $642,824.76 paid by the Bank for taxes, assessments, and interest. In addition, the Bank should have judgment against the corporation for its $300,000 deficiency, $12,000 attorneys fees, plus interest.

■ Gittleman's argument that the trial court applied an incorrect legal standard in judging the good faith of the foreclosure sale is without merit. It has long been settled in this state that a foreclosure sale free from fraud or irregularity will not be held invalid for inadequacy of the price, since the mortgagor has a period to redeem from foreclosure. *Guidarelli v. Lazaretti*, 305 Minn. 551, 233 N.W.2d 890 (1975); *Kantack v. Kreuer*, 280 Minn. 232, 158 N.W.2d 842 (1968). Gittleman has claimed neither

**5.** Minn.St. 582.03, provides that the amounts paid by the purchaser for such expenses must be added to the amount which the mortgagor must pay to redeem: "The purchaser of any sale, upon foreclosure of mortgage or execution or at any judicial sale during the year of redemption, may pay any taxes or assessments on which any penalty would otherwise accrue, and may pay the premium upon any policy of insurance procured in renewal of any expiring policy upon mortgaged premises, and may, in case any interest or instalment of principal upon any prior or superior mortgage is in default or shall become due during such year of redemption, pay the same, and, in all such cases, the sum so paid with interest, shall be a part of the sum required to be paid to redeem from such sale."

fraud nor irregularity, but merely inadequacy of the price. The trial court specifically found that "[i]n making its bid in an amount less than the total debt owed the Bank acted in good faith in considering unpaid taxes and other encumbrances against the property." This court, of course, will not upset a finding of fact unless it is clearly erroneous. Rule 52.01, Rules of Civil Procedure; *In re Estate of Balafas*, 293 Minn. 94, 198 N.W.2d 260 (1972). Upon a careful reading of the evidence, it does not appear that the trial court was clearly mistaken in its finding. We therefore sustain the trial court's finding that the foreclosure bid was made in good faith.

The Bank argues, on a number of theories, that Gittleman is liable for the amount of the judgment entered against the corporation. Neither Gittleman nor the partnership were parties on the promissory note running in favor of the Bank. The trial court therefore concluded that neither was liable because of Minn.St. 336.3–401(1).[6] The trial court's conclusion was legally correct.

The Bank's main theory essentially is that the corporate veil should be pierced to hold Gittleman liable because he is a partner in the partnership which dominated the corporation that executed the note. Disregard of the corporate entity theories is equitable in nature, and generally is not available, absent fraud. See, *Matchan v. Phoenix Land Inv. Co.*, 159 Minn. 132, 198 N.W. 417 (1924). No fraud has been shown in this case. Furthermore, where the corporate veil is pierced, it is usually to hold the shareholders liable. Gittleman is not a shareholder of the corporation. The only shareholders are the three other partners in the partnership who also signed as guarantors on the note. The Bank was a consensual and sophisticated creditor of the corporation and should, therefore, be generally regarded as being able to look out for itself, as was stated in a note entitled *Disregard of the Corporate Entity* in 4 Wm. Mitchell L.Rev. 333, 356 (1978):

> "The consensual creditor normally intends to bargain with the corporation. In the usual case, the freedoms of contract are available during negotiations, including the opportunity to investigate the financial stability of the corporation and the ability to negotiate for shareholder guaranty of the obligation. If the creditor fails to take advantage of these opportunities, he should be deemed to have done so at his own risk, especially in view of the widespread understanding of the limited liability principle." (Footnotes omitted.)

The Bank looked to the three principals in the corporation as guarantors and has settled its claims with them. We will not pierce the corporate veil to hold Gittleman liable on the note where the Bank did not rely on any guaranty by him or the partnership in extending credit.

Furthermore, the Bank did not assert a claim against Gittleman personally in this action nor move to amend the pleadings to conform to the evidence.

Affirmed in part and remanded for a modification of the judgment in accordance with this opinion.

OTIS, J., took no part in the consideration or decision of this case.

---

6. Minn.St. 336.3–401(1) provides: "No person is liable on an instrument unless his signature appears thereon."