In re O. Walter JOHNSON, and JCA
Partnership, Debtors.

UNITED FEDERAL SAVINGS
BANK, Plaintiff,

v.

O. Walter JOHNSON and JCA
Partnership, Defendants.

Bankruptcy Nos. 4–88–2424, 4–88–2824.
Adv. No. 4–89–98.

United States Bankruptcy Court,
D. Minnesota.

Nov. 22, 1989.

Christopher A. Elliott, Christoffel & Elliott, P.A., St. Paul, Minn., for debtors.

Thomas J. Lallier, Mackall, Crounse & Moore, Minneapolis, Minn., for plaintiff.

## MEMORANDUM DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR PARTIAL SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on cross-motions for summary judgment in plain-

tiff's action to determine the validity and extent of its alleged interest in rents. Appearances were as follows: Thomas Lallier for the plaintiff United Federal Savings Bank ("UFSB"), and Christopher Elliott for the defendants O. Walter Johnson ("Johnson") and JCA Partnership ("JCA"). This Court has jurisdiction to hear and finally determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following Memorandum Decision shall constitute the Court's Findings of Fact and Conclusions of Law.[1]

### UNDISPUTED FACTS

On June 27, 1985, James L. Crockarell ("Crockarell") executed and delivered to UFSB a Promissory Note (the "Note") in the original principal amount of $390,000. To secure repayment of the Note, Crockarell also executed and delivered to UFSB a document entitled "Combination Mortgage, Security Agreement and Fixture Financing Statement" (the "Mortgage"), which was also dated June 27, 1985. The Mortgage granted UFSB an interest in a parcel of commercial real estate that Crockarell had owned for some time prior to the execution of the Note and Mortgage. It also granted, conveyed and assigned to UFSB all rents then or thereafter generated by or pertaining to the mortgaged property. The assignment of rents was granted both to provide additional security for the debt secured by the Mortgage and to secure Crockarell's performance of the covenants and agreements contained in the Note and Mortgage. According to the terms of the Mortgage, Crockarell agreed, among other things, to pay all real estate taxes assessed against the mortgaged property and any foreclosure expenses UFSB might incur as a result of default by Crockarell. The Mortgage also prohibited Crockarell from conveying the property to a third party without prior consent of UFSB. UFSB duly recorded the Note and Mortgage with

---

1. The Court bases its Findings of Fact and Conclusions of Law upon the pleadings, affidavits and memoranda submitted in support of the cross-motions, and the argument of counsel presented at the motion hearing.

the County Recorder of Hennepin County, Minnesota, on July 12, 1985.

On December 31, 1986, Crockarell sold the mortgaged property to Johnson, who assumed Crockarell's obligations under the Note and Mortgage. In an Assignment Agreement entered on that same date, UFSB consented to the sale, releasing Crockarell from all obligations under the Note and Mortgage and substituting Johnson for the same. The Assignment Agreement made no specific reference to the assignment of rents contained in the Mortgage. The parties agreed that the principal amount due on the Note, and secured by the Mortgage and assignment of rents, was $387,890.37 at the time the Assignment Agreement was executed.

Johnson defaulted in making payments on the Note and fell behind in paying real estate taxes due and payable for the second half of 1985, and for the years 1986, 1987 and 1988, as well as for the first half of 1989. UFSB commenced a mortgage foreclosure proceeding under Chapter 581 of the Minnesota Statues in the Hennepin County District Court. UFSB then moved for appointment of a receiver under Minn. Stat. § 576.01 subd. 1. By Order dated May 4, 1988, the Hennepin County District Court appointed Jeffrey J. Sauer as receiver for the mortgaged property.

During the pendency of the foreclosure proceeding, and subsequent to appointment of the receiver, Johnson and JCA, a closely related entity, each filed separately for relief under Chapter 11 of the Bankruptcy Code.[2] UFSB moved for relief from stay to proceed with foreclosure, and also moved for permission to have the foreclosure receiver remain in possession of the mortgaged property. By Order entered on stipulation and dated October 14, 1988 this Court (a) modified the stay to permit UFSB to proceed with foreclosure; (b) required the receiver to turn over possession of the mortgaged property to Johnson and JCA; (c) granted permission for Johnson and JCA to employ the receiver as manager of the mortgaged property; (d) required all rents collected by the receiver as property manager to be paid into an Escrow Account, from which the receiver was authorized to pay certain expenses without prior approval; (e) permitted UFSB to dismiss its foreclosure action without prejudice; and (f) declared that the Order in no way prejudiced the parties' conflicting claims to the rental proceeds remaining in the Escrow Account. Paragraph 10 of that Order recited, "Nothing in this Order shall be deemed to prejudice any party with respect to the assignment of rents issue...."

UFSB elected to foreclose on the mortgaged property by advertisement under Chapter 580 of the Minnesota Statutes. The property was sold at a sheriff's sale held March 14, 1989. By a Protective Order dated April 25, 1989, the Court permitted UFSB to pay, without prejudice to its claimed interest in rents, the delinquent real estate taxes assessed against the property for the first half of 1985 and all of 1986, 1987, and 1988. UFSB has paid those delinquent taxes, and has also paid the real estate taxes for the first half of 1989. The period for redemption of the mortgaged property has now expired.

On March 15, 1989, UFSB commenced this adversary proceeding to determine, under 11 U.S.C. § 506(a), the validity and extent of its interest in the rents collected prepetition and postpetition by Mr. Sauer, both in his capacity as a state court-appointed receiver and in his service following the Order of October 14. Johnson's Answer alleged various counterclaims, the nature of which will be made apparent during the course of this Memorandum Decision.

## DISCUSSION

Federal Rule of Civil Procedure 56(c), as incorporated by Bankruptcy Rule 7056, provides the requirements for granting a mo-

---

**2.** Johnson claimed to have received a partnership interest in the mortgaged property as nominee for JCA pursuant to a Nominee Agreement dated July 1, 1985. The two estates have resolved their conflicting claims to ownership interests in this property and others in a Settlement Agreement, which has been approved by this Court. For purposes of this opinion, Johnson and JCA will be jointly referred to as Johnson.

tion or cross-motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

The parties agree that their concurrence on most, if not all, of the material facts renders this dispute ripe for summary judgment. The parties also agree that state law controls the validity and enforceability of an assignment of rents. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); *Saline State Bank v. Mahloch*, 834 F.2d 690, 692 (8th Cir.1987).

### A. Requirements for Valid Assignments of Rents

Johnson contends that Minn.Stat. § 559.17 provides the exclusive conditions for a valid assignment of rents. They further contend, and UFSB does not dispute, that the instant assignment of rents does not fulfill the conditions established by that statute. From this, Johnson concludes that the instant assignment of rents is invalid, and therefore he is entitled to summary judgment. UFSB responds that Minn.Stat. § 559.17 does not provide the exclusive basis for a valid assignment of rents, and that the instant assignment is valid under common law. Consequently, UFSB contends that it is entitled to summary judgment. In this dispute, as is frequently the case, the law supports the positions of neither the plaintiff nor the defendants completely. *Quandoque bonus dormitat Homerus.*[3]

The state of the law as it existed at the time Minn.Stat. § 559.17 was enacted reveals that the Legislature did not intend for its enactment to eliminate pre-existing legal bases for a valid assignment of rents. Section 559.17, and the long-standing line of statutes from which it arises, provide that a mortgage cannot constitute a conveyance granting the mortgagee the right to take possession of the mortgaged property without a foreclosure. *Compare* Minn.Stat. § 559.17 (1967) and Minn.Stat. § 9572 (1927). This statute had been construed to invalidate all assignments of rents except 1) assignments executed subsequent to the mortgage and given in exchange for consideration, and 2) assignments securing reimbursement of the mortgagee for payment of taxes and assessments levied against the mortgaged property:

> An assignment of rents for the purpose of applying the same to the principal of the mortgage is a partial foreclosure. It is a clear evasion of the fundamental, and now statutorily enacted, principle of law that until the mortgage debt is due, until the mortgage has been foreclosed, and until the redemption period has run, unless extraordinary circumstances justify the appointment of a receiver, the mortgagor shall be entitled to the possession, enjoyment, and full usufruct of the land. An assignment of rents to the mortgagee subsequent to the time of executing the mortgage is valid under certain circumstances, Farmers Tr. Co. v. Prudden, 84 Minn. 126, 86 N.W. 887.... [It also] has long been settled that a provision of a mortgage assigning rents to reimburse a mortgagee who is compelled to pay taxes on the property to keep his security intact is valid and will be enforced.

*Mutual Benefit Life Insurance Co. v. Canby Investment Co.*, 190 Minn. 144, 147, 251 N.W. 129 (1933). *See also* Note, *Proposed Changes in Minnesota Mortgage Law*, 50 Minn.L.Rev. 331, 343–44 (1965); *G.G.C. Co. v. First National Bank*, 287 N.W.2d 378, 381 (Minn.1979).

Section 559.17 was amended in 1969 to add language regarding proper interpretation of the statute:

> Nothing contained herein shall be construed to prevent a mortgagor from assigning, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, and such an assignment shall

---

**3.** "Sometimes even good Homer sleeps." Horace, *Ars Poetica*.

be valid whether contained in the mortgage instrument or in a separate instrument.

1969 Minn.Laws. ch. 711, § 1. This amendment did not affect the validity of assignments of rents under the two circumstances described above:

> This court has recognized the validity of assignment-of-rents clauses for these purposes long before the 1969 amendment extended their application to securing the mortgage debt itself.

*G.G.C. Co.*, 287 N.W.2d at 382. Instead, the amendment reversed the long-standing interpretation of the statute invalidating assignments of rents given with a mortgage as additional security for the debt secured by the mortgage. *"All* the amendment did was to validate a previously invalid type of security arrangement...." *Mutual Benefit Life Insurance Co. v. Franz Klodt & Son, Inc.*, 306 Minn. 244, 248, 237 N.W.2d 350 (1975) (per curiam, en banc) (emphasis added). The new statutory language validating formerly invalid assignments of rents cannot reasonably be interpreted to make an additional change in the law so as to invalidate assignments of rents that had previously been valid under the pre-amendment statute.

Similarly, when section 559.17 was amended again in 1977, no change was made in the law recognizing the validity of assignments of rent granted subsequent to the mortgage or granted to secure reimbursement of the mortgagee for payment of taxes and assessments levied against the mortgaged property. Instead, the 1977 amendment modified the change made by the 1969 amendment. Assignments of rents given with a mortgage as additional security for the debt secured by the mortgage had been made unconditionally valid by the 1969 amendment. *See G.G.C. Co.*, 287 N.W.2d at 382 n. 3. The 1977 amendment provided that those same assignments of rents were valid only if they fulfilled certain conditions:

> A mortgagor may assign, *as additional security for the debt secured by the mortgage,* the rents and profits from the mortgaged real property, if the mortgage:
>
> (1) Was executed, modified or amended subsequent to August 1, 1977;
>
> (2) Secured an original principal amount of $500,000 or more; and
>
> (3) Is not a lien upon property which was entirely homesteaded as agricultural property.

1977 Minn.Laws ch. 202, § 2 (emphasis added).

■ These requirements apply only to those assignment of rents that enable the mortgagee to take possession of the mortgaged property without a foreclosure. Minn.Stat. § 557.17 subd. 1. Only those assignments of rents executed contemporaneously with the mortgage and given as additional security for the debt secured by the mortgage constitute a pre-foreclosure grant of possession:

> We have held that this statutory language rendered unenforceable an agreement in a mortgage to give the mortgagee possession of the premises in event of default, and that an assignment of rents from the mortgaged premises for application against the mortgage debt constituted a grant of possession, and thus was also invalid.

*State Mutual Life Assurance Co. v. Franz Klodt & Sons, Inc.*, 306 Minn. 249, 252, 237 N.W.2d 354 (1975) (per curiam, en banc). Assignments of rents given subsequent to the mortgage for additional consideration or given to secure reimbursement of the mortgagee for payment of taxes and assessments levied against the mortgaged property do not enable the mortgagee to recover the mortgaged property without a foreclosure. *Farmers Trust Co. v. Prudden*, 84 Minn. 126, 127–28, 86 N.W. 887 (1901); *Canby Investment Co.*, 190 Minn. at 147, 251 N.W. 129. Therefore, these latter categories of assignments of rents can be valid without fulfilling the conditions established in Minn.Stat. § 559.17 subd. 2.

**B. Validity of Assignment to UFSB**

■ The instant assignment of rents was given both to provide additional security

for the debt secured by the Mortgage and to secure reimbursement of UFSB for expenditures it might be required to make because of a failure by the mortgagors to pay taxes and assessments that the mortgagors were required to pay under the terms of the Mortgage. Consequently, the assignment is valid at least to the extent that it secures reimbursement of UFSB for expenditures it was required to make because Johnson defaulted. *Erickson–Hellekson–Vye Co. v. A. Wells Co.*, 217 Minn. 361, 382–83, 15 N.W.2d 162 (1944).[4]

UFSB contends that the portion of the assignment of rents providing additional security for the debt secured by the Mortgage is also valid, since, according to UFSB, that the assignment of rents was given for separate consideration. UFSB's reliance on the *Prudden* case for support of this contention, however, is misplaced. Unlike the Mortgage in the instant case, the original mortgage in *Prudden* did not include an assignment of rents. Because the value of the mortgaged property had declined following execution of the mortgage, leaving the mortgagee undersecured, an assignment of rents was subsequently given as additional security for the debt secured by the mortgage. In exchange for the assignment, the mortgagee agreed to extend the time for repayment of the mortgage debt. *Prudden*, 84 Minn. at 127, 86 N.W. 887.

■ Even if the instant assignment of rents had been given for separate consideration, which does not appear to be the case here, it was not given subsequent to the execution of the Mortgage. The assignment of rents was part of the Mortgage executed by Crockarell, and it continued to be part of the Mortgage when it was assumed by Johnson:

The case heavily relied upon by appellant, *Farmers Trust Co. v. Prudden*, 84 Minn. 126, 86 N.W. 887 (1901), is distinguishable on several points. The assignment-of-rents agreement there was upheld as not giving the mortgagee possession because it was executed separately and subsequently to the mortgage itself, was supported by a separate consideration, and was not given as security for the mortgage debt. However, here the assignment was executed at the same time as the mortgage, was supported by the same consideration, and was given as security for the mortgage debt.... We find the assignment-of-rents agreement to be so closely connected with the mortgage itself, making *Prudden* clearly distinguishable.

*State Mutual Life Assurance Co.*, 306 Minn. at 253, 237 N.W.2d 354. *See also G.G.C. Co.*, 287 N.W.2d at 381. Therefore, the portion of the instant assignment of rents that purports to provide additional security for the debt secured by the Mortgage falls into the category of assignments of rents that were invalid pursuant to statute prior to 1969. Consequently, that portion of the assignment must meet the requirements of Minn.Stat. § 559.17 subd. 2, which UFSB's counsel concedes it fails to do. Therefore, that portion of the instant assignment of rents is invalid.[5]

### C. Enforcement of UFSB's Interest

■ Johnson contends that, should the assignment of rents be found valid, the assignment was enforceable only as to the rents accruing prepetition. The state court receiver was a "custodian" required to turn all collected rents (both prepetition and postpetition rents) over to Johnson as debtor in possession, pursuant to 11 U.S.C. § 543(b). *See* 11 U.S.C. § 101(10)(A, C). According to Johnson, the turnover of the

---

**4.** UFSB seeks only payment of real estate taxes levied against the mortgaged property. In addition to securing reimbursement for payment of real estate taxes, an assignment of rents could, under pre–1969 law, validly secure reimbursement for payment of assessments, insurance, interest and principal payments on a senior mortgage, and necessary repairs. *G.G.C. Co.*, 287 N.W.2d at 382.

**5.** This conclusion moots Johnson's contention that finding a valid assignment of rents securing repayment of the underlying debt would be contrary to the rule that a mortgagee cannot obtain a deficiency judgment if it forecloses by advertisement. *See* Minn.Stat. § 582.30(2).

collected rents terminated UFSB's enforcement of the assignment of rents. Under Minnesota law, an assignment of rents must be enforced by making demand on the mortgagor for payment of rents, by making demand on the tenants to pay rents to the mortgagee rather than the mortgagor, by obtaining appointment of a receiver, or by obtaining voluntary possession of the mortgaged property, in order for the mortgagee to have any right to receive the assigned rents. *See, e.g., Prudden,* 84 Minn. 126, 86 N.W. 887 (enforcement by demand on mortgagor or by appointment of receiver); *Cullen v. Minnesota Loan & Trust Co.,* 60 Minn. 6, 61 N.W. 818 (1895) (enforcement by demand on tenants); *Mutual Benefit Life Insurance Co.,* 306 Minn. 244, 237 N.W.2d 350 (enforcement by appointment of receiver); Note, 50 Minn.L. Rev. at 344 n. 43 (enforcement by voluntary possession).

UFSB responds that it perfected the assignment of rents prepetition by recording the Mortgage containing the assignment. Therefore, UFSB contends, no enforcement was necessary. *See New York Life Insurance Co. v. Bremer Towers,* 714 F.Supp. 414 (D.Minn.1989); *Northwestern National Life Insurance Co. v. Metro Square (In re Metro Square),* 93 B.R. 990 (Bkrtcy.D. Minn.1988); *Capital Realty Investor Tax Exempt Fund Limited Partnership v. Greenhaven Village Apartments Phase II Limited Partnership (In re Greenhaven Village Apartments Phase II Limited*

*Partnership),* 100 B.R. 465 (Bktcy.D.Minn. 1989); *In re Pavilion Place Associates,* 89 B.R. 36 (Bktcy.D.Minn.1988).

■ The Court, however, need not decide whether mere recording is sufficient to establish UFSB's interest in rents,[6] since UFSB enforced its recorded assignment of rents prior to the filing of the bankruptcy petition. By virtue of its prepetition enforcement, UFSB retained an interest in the postpetition rents:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before commencement of the case and to proceeds, products, offspring, *rents,* or profits of such property, then such security interest extends to such proceeds, product, offspring, *rents,* or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law. . . .

11 U.S.C. § 552(b) (emphasis added). The Court can find no support for Johnson's contention that appointment of the receiver pursuant to Minn.Stat. § 576.01 subd. 1 was not sufficient to enforce the assignment of rents. UFSB's interest clearly ex-

---

**6.** Although it is now the law of this district that assignments of rents made valid by Minn.Stat. § 559.17 need not be enforced to afford the mortgagee a superior interest in rents *vis-a-vis* the trustee or debtor in possession, such may not be the rule for assignments of rents valid under pre–1969 Minnesota law. *See Greenhaven Village Apartments Phase II Limited Partnership,* 100 B.R. at 469 n. 6. The courts of this district (other than myself) have held that recording alone, without subsequent enforcement, is sufficient to render § 559.17 assignments enforceable against third parties because such assignments were deemed to grant interests in real estate as opposed to personal property. *Id.* at 469–70. Recording alone is sufficient to establish a lien on real estate enforceable against third parties. *Id.* at 470.

But assignments of rents valid under pre–1969 Minnesota law were valid precisely because they were not deemed to grant interests in real

estate. *See Prudden,* 84 Minn. at 127–28, 86 N.W. 887; *Canby Investment Co.,* 190 Minn. at 147, 251 N.W. 129. Under the law of assignments of rents universally recognized in "lien theory" states, a creditor with a prior-recorded assignment of rents does *not* have an interest in rents superior to that of a creditor who has enforced a later-recorded assignment, so long as the senior assignee has *not* enforced its prior-filed assignment. *Exchange National Bank v. Gotta (In re Gotta),* 47 B.R. 198, 202 (Bktcy.W. D.Wisc.1985). Once the prior-recorded assignment is enforced, the senior assignee is entitled to rents going forward, but cannot recover rents previously received by the junior assignee as a result of the latter's prior enforcement. Thus, if such assignments of rents grant interests in personal property as opposed to real estate, recording alone would not be sufficient to establish a senior assignee's rights against junior assignees, including the trustee or debtor in possession.

tended to the prepetition rents by virtue of appointment of the receiver. Neither the terms of the assignment of rents nor applicable non-bankruptcy law cause enforcement of the assignment of rents to cease upon the filing of a bankruptcy petition. Therefore, UFSB's interest extends to the postpetition rents.

■ Johnson asserts that turnover under section 543 precluded this result. But, contrary to Johnson's assertion, turnover did not nullify the postpetition effect of UFSB's prepetition enforcement of the assignment of rents, any more than it extinguished the mortgage on the property. In either case, the property turned over remained subject to the lien. Similarly, the change allegedly made in the receiver's status by the Court's Order of October 14, 1988 [7] did not undo the effect of UFSB's prepetition enforcement. Therefore, UFSB has an interest in the postpetition rents to the extent that the assignment of rents granting that interest was valid.

Johnson's complaint that the postpetition rents will be used to reimburse UFSB for its payment of prepetition real estate taxes is of no consequence. Under applicable non-bankruptcy law, UFSB would be entitled to receive reimbursement of those expenses from any rents accruing after it had enforced the assignment, and since UFSB perfected and enforced prepetition, section 552(b) preserves that entitlement postpetition.

### D. Recovery of Receivership Expenses

■ The Court cannot resolve Johnson's counterclaim under 11 U.S.C. § 506(c) in the context of a motion for summary judgment, since there exists a genuine issue of material fact regarding whether the value of UFSB's allowed claims secured by the assigned rents exceed the value of the collateral. UFSB must be oversecured in order for Johnson to be entitled to pay expenses associated with appointment of the receiver from rents in the Escrow Account.

The facts necessary to determine UFSB's oversecured status have not been established to the Court's satisfaction, and therefore summary judgment on Johnson's counterclaim is denied.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. The motion of plaintiff United Federal Savings Bank for summary judgment is granted in part, and denied in part;

2. The cross-motion of defendants O. Walter Johnson and JCA Partnership for summary judgment is granted in part, and denied in part;

3. Plaintiff is determined to have a valid, duly perfected interest in rents generated by the property subject to the Combined Mortgage, Security Agreement and Fixture Financing Statement, to the extent that the assignment secures reimbursement of UFSB for expenses it incurred as a result of Johnson's failure to pay real estate taxes, or as a result of any other breach by Johnson of the agreements and covenants contained in the Note and Mortgage for which UFSB has an allowed claim. The rents assigned to secure such reimbursement are all those accruing during the period beginning at the time the state court receiver was appointed and ending at the time the redemption period expired.

4. Plaintiff has no valid security interest in the rents generated by said property except as provided for in paragraph 3 above.

5. Defendants' motion for summary judgment on its counterclaim under 11 U.S.C. § 506(c) is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**7.** Johnson contends that the Order transformed the receiver into Johnson's agent, which, according to Johnson, terminated enforcement of the assignment of rents. The Court need not engage in interpretation of its previous Order, since the effect section 552(b) gives to the prepetition appointment of the receiver makes the receiver's remaining in place postpetition unnecessary for preserving UFSB's interest in the postpetition rents.